## CITY OF DULUTH v. FRANZ D. ORR.[1]

July 28, 1911.

Nos. 17,114—(223).

**City charter — extra-territorial authority.**

A city, adopting a charter for its own government under the constitutional and statutory authority, is not authorized to extend its power and jurisdiction to territory and residents outside the boundaries of the city.

Appeal by defendant from an order of the district court for St. Louis county, Ensign, Cant, Dibell, and Hughes, JJ., affirming a

[1] Reported in 132 N. W. 265.

judgment of the municipal court of Duluth, wherein he was found guilty of the violation of a city ordinance relative to storing explosives within one mile of and outside the limits of the city of Duluth. The facts were stipulated. Reversed.

*Spencer & Marshall* and *J. P. Laffey,* for appellant.

*Walter F. Dacey,* for respondent city.

SIMPSON, J.

In February, 1900, the citizens of Duluth adopted a charter under the authority of section 36, art. 4, of the Constitution, permitting a city "to frame a charter for its own government as a city consistent with and subject to the laws of this state," and of the laws of the state passed pursuant to this constitutional provision. Chapter 351, p. 462, Laws 1899; sections 748–758, R. L. 1905. Under these statutes a city is authorized "to frame a city charter for its own government," and it is further provided: "Subject to the limitations in this chapter provided, it may provide for any scheme of municipal government not inconsistent with the Constitution, and may provide for the establishment and administration of all departments of a city government, and for the regulation of all local municipal functions, as fully as the legislature might have done before the adoption of section 33, art. 4, of the Constitution. * * * Nothing in this section shall authorize a change of boundaries."

The charter adopted by the city of Duluth grants to the common council the usual powers to pass ordinances to promote the general welfare and for the general government and good order of the city, for the protection of the public health, comfort, and safety. For such purpose specific power is granted: "Fortieth. To regulate or prohibit the storage, receipt, transportation, dealing in and use of gunpowder, dry pitch, rosin, coal oil, benzine, naphtha, gasolene, turpentine, gun cotton, nitroglycerin, and any products thereof, and other combustibles or explosive materials within the city, or within one (1) mile from the limits thereof." The common council passed an ordinance prohibiting the storing of specified explosives within the city or within one mile beyond the city limits without a permit, limiting the amount which might be stored under permit, regulating

the manner of storage, and fixing a penalty of fine or imprisonment for a violation of the ordinance. The defendant was charged in the municipal court of the city of Duluth with violating this ordinance by keeping a prohibited amount of dynamite in a building within one mile beyond the city limits, and upon trial was adjudged guilty. An appeal being taken to the district court, the judgment was by order affirmed. From this order the defendant appealed to this court.

The first and only serious question raised by the appeal is as to the right of the citizens of Duluth, under the constitutional and legislative authority, to empower the city council to exercise municipal authority beyond the limits of the city. By the constitutional amendment a city is permitted to frame a charter "for its own government." This language contains no express authority to frame a charter for the government of territory or people not a part of or within the city. If such power is conferred, it is by implication as an incident to the internal government of the city. The limitation in section 751, R. L. 1905, the section containing the general grant of power, that "nothing in this section shall authorize a change of boundaries," is significant. The power to enlarge its boundaries being withheld from the city, the power to exercise authority and control beyond its boundaries cannot be fairly implied. In Grant v. Berrisford, 94 Minn. 45, 101 N. W. 940, 1133, it is stated that the constitutional amendment permitting cities to make their own charters "fairly implies that the charter adopted by the citizens of a city may embrace all appropriate subjects of municipal legislation and constitute an effective municipal code of equal force as a charter granted by direct act of the legislature." State v. District Court of St. Louis County, 90 Minn. 457, 97 N. W. 132; State v. District Court of Ramsey County, 87 Minn. 146, 91 N. W. 300; State v. O'Connor, 81 Minn. 79, 83 N. W. 498.

Under this rule the question here presented is the same as if the legislature had, by law, directly authorized the city council to regulate or prohibit the storage of explosives. Such authority would amply sustain reasonable regulations within the city, but would not sustain the ordinance here in question as applied to territory beyond

the city. From the general grant of power by the legislature to regulate the storage of explosives, there would be no implied power to regulate the storage beyond the city limits. The general rule, applicable to municipalities as well as to states, is that the power and jurisdiction of the city are confined to its own limits and to its own internal concerns. As said by Chief Justice Marshall, in Rose v. Himely, 4 Cranch, 241, 279, 2 L. ed. 608:

"It is conceded that the legislation of every country is territorial; that beyond its own territory it can only affect its own subjects or citizens. It is not easy to conceive a power to execute a municipal law, or to enforce obedience to that law, without the circle in which that law operates."

An express grant by the legislature to a municipality of extraterritorial dominion rests on a very different basis. The right given to the people within prescribed territorial limits to adopt a complete municipal code does not warrant the assumption by them of power over territory and people beyond those limits, even though the control of such territory and people would be convenient and gratifying to the people within the city. The practical difficulties involved in the assumption by cities of such power are apparent. Innumerable conflicts in authority would inevitably follow. Such a result is not reasonably within the purview of the constitutional amendment. The ordinance, with the violation of which the defendant was charged, is, as to territory beyond the city limits, invalid.

The order appealed from must therefore be reversed.