## TOWN OF BURNSVILLE AND OTHERS v. CITY OF BLOOMINGTON AND OTHERS.

128 N. W. (2d) 97.

April 24, 1964—No. 39,071.

*John G. Pidgeon,* City Attorney, and *Dale J. Happe,* Assistant City Attorney, for appellant.

*Grannis & Grannis, David L. Grannis, Jr., Vance B. Grannis, Jr., Briggs & Morgan, Richard E. Kyle, Frank N. Graham,* and *David C. Forsberg,* for respondents.

KNUTSON, CHIEF JUSTICE.

This is an appeal from a judgment of the district court declaring void an ordinance of defendant city of Bloomington purporting to annex certain territory of plaintiff town of Burnsville and enjoining the enforcement thereof.

The city of Bloomington is an incorporated city lying wholly within

Hennepin County and operating under a home rule charter adopted pursuant to Minn. Const. art. 11, § 3. The town of Burnsville is an unincorporated township lying wholly within Dakota County. The Minnesota River is a navigable stream forming the boundary between Hennepin and Dakota Counties, the center of the river being the south boundary of the city of Bloomington and the north boundary of the town of Burnsville.

Northern States Power Company owns about 159 acres of unplatted land in the town of Burnsville bordering on the river. In 1952 it constructed a power plant on this land known as the "Blackdog" generating plant. The 1961 assessed value of the entire town of Burnsville was $11,800,298, of which the assessed value of the Northern States Power Company property amounted to $9,982,125, or somewhat over 80 percent.

On August 22, 1961, after negotiations extending over a period of more than a year, Northern States Power Company executed a petition requesting Bloomington to annex its 159 acres of land to the city. On the same day, Bloomington adopted an ordinance under § 3.06 of its home rule charter purporting to annex this property.

This action was commenced for a declaratory judgment praying that the ordinance be declared null and void. The right to maintain the action was determined in Town of Burnsville v. City of Bloomington, 264 Minn. 133, 117 N. W. (2d) 746. Thereafter, the trial court determined that the ordinance was null and void and permanently enjoined its enforcement, and this appeal is from the judgment entered pursuant to that determination.

The annexation is sought under Minn. St. 1961, § 414.03, subd. 2, which, as far as material here, reads:

"Territory abutting on any municipality and not included in any other municipality may be annexed to the municipality without an order of the commission in the manner provided in this subdivision:

\* \* \* \* \*

"If the land is platted or, if unplatted, does not exceed 200 acres, the owner or a majority of the owners in number may petition the governing body of the municipality to have such land included within the

municipality. If the governing body determines that the annexation will be to the best interests of the municipality and of the territory affected, it may by ordinance declare such land annexed to the municipality, but if the petition is not signed by all the owners of the land proposed to be annexed, the ordinance shall not be passed until the governing body has held a hearing on the proposed annexation after at least 30 days posted notice.

"Any annexation provided for in this subdivision shall be deemed final upon filing a copy of the ordinance with the commission, the county auditor, and the secretary of state."

The Bloomington charter contains the following pertinent provisions respecting the manner in which ordinances may be adopted:

§ 3.04. "Except as in this charter otherwise provided, all legislation shall be by ordinance. The aye and no vote on ordinances, resolutions, and motions shall be recorded unless the vote is unanimous. An affirmative vote of a majority of all the members of the council shall be required for the passage of all ordinances and resolutions, except as otherwise provided in this charter."

§ 3.05. "A statement of the purpose and effect of every ordinance, except an emergency ordinance, stating the time and place at which it will be considered, shall be published once in the official newspaper at least one week prior to its introduction and final passage."

§ 3.06. "An emergency ordinance is an ordinance necessary for the immediate preservation of the public peace, health, morals, safety or welfare in which the emergency is defined and declared in a preamble thereto and is adopted by a vote of at least five members of the council. No prosecution shall be based upon the provisions of any emergency ordinance until 24 hours after the ordinance has been filed with the secretary of council and posted in a conspicuous place at the city hall or until the ordinance has been published, unless the person charged with violation had actual notice of the passage of the ordinance prior to the act or omission complained of."

§ 3.08. "Every ordinance or resolution passed by the council shall be signed by the mayor or by the acting mayor, attested by the secre-

tary of the council and filed and preserved by him. Every ordinance and such resolutions as may be designated by the mayor or by two other members of the council shall be published at least once in the official newspaper. To the extent and in the manner provided by law an ordinance may incorporate by reference a statute of Minnesota, a state administrative rule or a regulation, a code, or ordinance or part thereof without publishing the material referred to in full."

§ 3.09. "A resolution and an emergency ordinance shall take effect immediately upon its passage or at such later date as is fixed in it. Every other ordinance shall take effect upon publication unless a later date not to exceed 30 days is fixed in it. Every ordinance and resolution adopted by the voters of the city shall take effect immediately upon its adoption or at such later time as is fixed therein."

Obviously, § 3.04 provides the manner in which ordinances ordinarily must be adopted, and § 3.06 provides an exception permitting the immediate adoption of an ordinance under the conditions therein stated.

The annexing ordinance was adopted under the emergency provisions of the charter and, as far as material, reads:

"The City Council of the City of Bloomington declares that an emergency exists and that it is necessary in order to preserve the public peace, health, safety and welfare that certain lands, hereinafter described, be annexed to the City of Bloomington; that the emergency consists of the necessity for the immediate extension to said lands and the industrial development there situate of the services of the City, including, but not limited to, police and fire protection, and the necessity for the immediate addition to and expansion of the economic base of the City of Bloomington; and, therefore, the City Council of the City of Bloomington ordains as follows:"

■ Bloomington contends that the court may not go behind the council's declaration of the existence of an emergency and inquire into the factual basis thereof for the reason that the action of the city is legislative and not subject to judicial inquiry.

On this question, two lines of authority have developed throughout the country, each supported by respectable authority, one holding as

Bloomington contends, which is commonly called the "conclusive theory," and the other holding that the mere declaration of the existence of an emergency does not make it so but that the courts may determine this issue and declare an ordinance ineffective if in fact no emergency existed. The cases are collected in a comparatively recent and exhaustive annotation in 35 A. L. R. (2d) 586, and supplemental decisions, and it would contribute nothing to attempt to discuss or reconcile the cases since that has already been done and is available through this annotation.[1] Suffice to say that after an examination of the cases on both sides of the subject we prefer to follow the nonconclusive theory. It seems to us to be sounder to adopt a rule of law under which a city council cannot evade the usual mode of adopting an ordinance by simply declaring the existence of an emergency when none in fact exists than to accept the conclusive theory, under which the council could, whenever it saw fit, evade the charter provisions which ordinarily contemplate a hearing before an ordinance is adopted. In order to keep the city council within the bounds of the charter which the people of the city have adopted pursuant to constitutional permission, it is necessary that the court be permitted to determine what the facts are and to declare ineffective an ordinance improperly adopted.

■ We have frequently held that, if a charter requires publication of an ordinance before it is effective, failure to comply with the charter mandate renders the ordinance ineffective.

In W. H. Barber Co. v. City of Minneapolis, 227 Minn. 77, 82, 34 N. W. (2d) 710, 713, we said:

"The publication of the ordinance and the map was required by virtue of * * * the * * * city charter, which provides that before any ordinance shall be in force it shall be published in the official paper of the city. This requirement is mandatory, and it is clear that failure to comply therewith would render any ordinance ineffective."[2]

---

[1]See, also, 37 Am. Jur., Municipal Corporations, § 153; 5 McQuillin, Municipal Corporations (3 ed.) § 15.40.

[2]See, also, Basting v. City of Minneapolis, 112 Minn. 306, 308, 127 N. W. 1131, 140 A. S. R. 490; Klotz v. Winona & St. P. R. Co. 68 Minn. 341, 71 N. W. 257.

The Bloomington charter requires publication at least one week prior to the introduction and passage of any ordinance except an emergency ordinance. In view of that fact, it is difficult to see why courts may not determine whether facts exist which would permit adoption of an emergency ordinance without such publication. To hold otherwise would nullify our conclusion in the above cases that publication is mandatory if the charter requires it and would permit the council, whenever it saw fit, to declare an emergency and pass an ordinance without complying with this requirement.

In 2 Dillon, Municipal Corporations (5 ed.) § 576, we find the following:

"It may be laid down as a general rule, *that all charter or statutory requirements as to the method* in which an ordinance shall be introduced, and the manner in which it shall be considered, are, when reasonably calculated to induce deliberation, mandatory in their nature, and must be complied with. Among statutory requirements of this nature are provisions that all ordinances shall be read three times before their final passage, and that no ordinance shall pass at the same meeting at which it is introduced. These provisions are mandatory, and an ordinance which is passed without complying with them is void."

Section 3.05 of the Bloomington charter, as has been shown above, requires a published statement of the purpose and effect of every ordinance, except an emergency ordinance, stating the time and place at which it will be considered, at least one week prior to the introduction and passage of the ordinance. Obviously, this provision is calculated to permit proper consideration of the ordinance and to provide an opportunity for those interested to be heard before it is adopted. It is conceded that this charter requirement was not followed, so it follows that if the ordinance cannot be sustained as an emergency ordinance it must fall altogether.

■ The annexation of a territory to a city is governed by statute. The manner in which the annexation may be accomplished is provided in the statute. Bloomington seems to justify adoption of an emergency ordinance for the reason that—

"* * * it is necessary in order to preserve the public peace, health, safety and welfare that certain lands, hereinafter described, be annexed to the City of Bloomington; that the emergency consists of the necessity for the immediate extension to said lands and the industrial development there situate of the services of the City, including, but not limited to, police and fire protection, and the necessity for the immediate addition to and expansion of the economic base of the City of Bloomington * * *."

The charter of the city provides:

"An emergency ordinance is an ordinance necessary for the *immediate* preservation of the public peace, health, morals, safety or welfare in which the emergency is defined * * *." (Italics supplied.)

■ Measures taken to protect the public peace, health, morals, safety, or welfare of a municipality fall within the police powers of the city and usually are exercised under those powers.[3]

In County of Los Angeles v. City Council of Lawndale, 202 Cal. App. (2d) 20, 26, 20 Cal. Rptr. 363, 366, the court said:

"* * * The action of a city council in the passage of an ordinance for the protection of the public peace, health and safety of the citizens of the community, is the exercise of the police power of such city, and the exercise thereof, with certain exceptions, not here involved, is limited to the existing boundaries of the city."

A city cannot exercise its police powers beyond its boundaries unless the right to do so is expressly granted by the legislature.[4]

■ The emergency upon which Bloomington seeks to justify the adoption of this ordinance consists of the alleged inadequacy of fire and police protection available to the property of Northern States Power Company. The evidence also indicates a lack of water and sewer facilities. None of the evidence relates to any emergency problems in the

[3]62 C. J. S., Municipal Corporations, § 132; The Alexander Co. v. City of Owatonna, 222 Minn. 312, 24 N. W. (2d) 244; State ex rel. Interstate Air-Parts v. M. A. C. 223 Minn. 175, 25 N. W. (2d) 718; State ex rel. Howard v. Village of Roseville, 244 Minn. 343, 70 N. W. (2d) 404.
[4]City of Duluth v. Orr, 115 Minn. 267, 132 N. W. 265.

city of Bloomington. The only claim in so far as Bloomington is concerned is that a necessity exists for the immediate addition to and expansion of the economic base of the city. The mere fact that it would be beneficial to the city to annex property would not establish an emergency that would justify ignoring the charter requirements for adoption of an ordinance.[5] We have held in a number of cases that the desire to add taxable property to a city does not of itself justify its annexation.[6]

Inasmuch as we adopt the view that the court may inquire into the existence of an emergency, unless some emergency did in fact exist that would permit the city to ignore the ordinary requirements for the adoption of ordinances, the ordinance adopted under the emergency provisions is ineffective to accomplish the annexation.

■ In the absence of affirmative evidence to the contrary, it will be presumed that an ordinance is regularly and legally enacted. Ordinances, like statutes, are presumed to be valid and are not to be set aside by the courts unless their invalidity is clearly established by the evidence.[7] However, where it appears from the evidence that the ordinance was adopted under an exception to the general rule and facts do not exist to justify ignoring the regular requirements of the city charter, the courts should not hesitate to declare such ordinance ineffective. While the ordinance itself is prima facie evidence of the existence of an emergency so that the burden of proof is placed upon the one who attacks it, the presumption is not conclusive and the ordinance may be shown to have been adopted contrary to the authority granted by the charter.[8]

---

[5] State ex rel. Hunzicker v. Pulliam, 168 Okla. 632, 37 P. (2d) 417, 96 A. L. R. 1294; Joplin v. Ten Brook, 124 Ore. 36, 263 P. 893.

[6] State ex rel. Simpson v. Village of Alice, 112 Minn. 330, 127 N. W. 1118; State ex rel. Hilton v. Village of Buhl, 150 Minn. 203, 184 N. W. 850; State ex rel. Burnquist v. Village of Leetonia, 210 Minn. 404, 298 N. W. 717; State ex rel. Hilton v. City of Nashwauk, 151 Minn. 534, 186 N. W. 694, 189 N. W. 592.

[7] State v. Modern Box Makers, Inc. 217 Minn. 41, 13 N. W. (2d) 731; Lyons v. City of Minneapolis, 241 Minn. 439, 63 N. W. (2d) 585.

[8] See, Los Angeles Dredging Co. v. City of Long Beach, 210 Cal. 348, 291 P. 839, 71 A. L. R. 161.

■ With these rules in mind, the evidence amply sustains the court's finding that no emergency existed in fact requiring the immediate annexation of this property for the preservation of the public peace, health, morals, safety, or welfare of the people of the city. Fire protection has been furnished by Burnsville under contract with other municipalities over a period of many years. At the time the ordinance was passed, Burnsville had two part-time constables. It now has a full-time police officer. There is no evidence that it has not furnished adequate police protection to the annexed area. Because of the separation of the city and the annexed property by the Minnesota River, Bloomington would be required to extend its water lines and to construct a sewage treatment plant in order to furnish the area public water and sewer services. The power company has its own water supply and sewer system at present, and it does not appear that there is need for public facilities in the annexed area. As far as Bloomington is concerned, it is apparent that the primary, and probably the only, purpose of the annexation was its desire to acquire additional taxable property. The attempt to accomplish this acquisition under the emergency powers of the city can be explained only by its desire to avoid a hearing that would have afforded interested parties an opportunity to be heard if they had proceeded in the usual manner. That these motives do not create an emergency within the meaning of the charter requires little demonstration.

There is still another reason why this annexation should not be upheld. The statute authorizing the annexation, Minn. St. 1961, § 414.03, provides inter alia:

"* * * If the governing body determines that the annexation will be to the best interests of the municipality and of the *territory affected,* it may by ordinance declare such land annexed to the municipality, * * *." (Italics supplied.)

This language came into the statute by L. 1961, c. 645, § 3, amending L. 1959, c. 686, § 3. Under similar language involving consolidation of school districts we have held that the words "territory affected" included the entire territory and not only the territory to be detached.

In its ordinance, the city found that "the annexation of said lands to the City of Bloomington is in the best interest of the City of Bloomington and of the lands to be annexed." That is not the language used in the statute. There was no determination by Bloomington that the annexation would be for the best interests of the territory affected, as required by statute.

In In re Certain School Districts, Freeborn County, 246 Minn. 96, 108, 74 N. W. (2d) 410, 418, which involved an attempt to acquire valuable taxable property by one school district from another in a consolidation proceeding, we said:

"Obviously it would not be for the best interests of district No. 76 to lose about 75 percent of its assessed valuation and only two school children. However, that is not the entire consideration. We think that it can be said that an arbitrary raid on the territory of one school district, by taking a small part having an industrial plant located thereon for the sole purpose of enhancing the taxable value of another district without taking over a corresponding proportion of the burden of education, ought not to be permitted and should be considered such arbitrary action as may be enjoined by judicial decision.

"It must be borne in mind that the people in that part of district No. 76 which remains outside the consolidated district have no voice, either by vote or otherwise, to protest the raid on their territory and that their only protection is such as may be afforded by the courts. If the courts have any power to interfere at all with the action of the administrative agency, it ought to be exercised in a case such as this."

The trial court also based its decision on the fact that the property sought to be annexed is not properly conditioned for annexation by the city of Bloomington. In view of our holding that the annexing ordinance was ineffective to accomplish its purpose, we need not pass on the sufficiency of the evidence to sustain this finding. The annexation statute (Minn. St. 1961, § 414.03, subd. 2) has now been amended by L. 1963, c. 807, so as to give the township from which the territory is to be taken more opportunity to be heard. If any new proceeding is commenced, the law as amended will necessarily govern, and it is not necessary to

determine in this case whether the property is properly conditioned for annexation.

Affirmed.