# INDEPENDENT SCHOOL DISTRICT NO. 700, ST. LOUIS COUNTY, v. CITY OF DULUTH AND OTHERS.

170 N. W. (2d) 116.

August 8, 1969—No. 41429.

*Reavill, Neimeyer, Johnson, Fredin & Killen, Conrad M. Fredin,* and *Thomas R. Thibodeau,* for appellant.

*Thomas Plante,* City Attorney, for respondent city.

*Ray G. Palmer,* for respondent school board.

NELSON, JUSTICE.

The action involved on this appeal was commenced by Independent School District No. 700, St. Louis County, Minnesota, plaintiff-appellant, against the city of Duluth, its mayor, its city

clerk, and the Board of Education of the city (Special School District No. 3, State of Minnesota). Plaintiff district sought judgment that an ordinance purporting to annex to the city certain property abutting the city was void and that, in any event, the annexation did not remove any land from plaintiff although the area annexed was included within plaintiff's boundaries.

After entering into a stipulation as to the facts, both plaintiff and defendants moved for summary judgment. On the basis of the stipulation and the pleadings, the trial court ordered that summary judgment be entered for defendants and the action be dismissed. Plaintiff appeals from the judgment thereafter entered.

The trial court, in a memorandum made a part of the order for summary judgment, analyzed the controversy as follows:

"On February 13, 1967, the City Council of the City of Duluth adopted an ordinance annexing to the City of Duluth property abutting such City, owned by such City, and known generally as the Duluth International Airport property. Such property was not on such date included in any other municipality. Such ordinance, by its own terms, and in accordance with the City Charter of the City of Duluth, provided that it would become effective thirty days after passage, approval by the Mayor, and publication by the City Clerk.

"On February 13, 1967, before the Mayor of the City of Duluth approved the ordinance, and before the City Clerk published the ordinance, this Court entered a temporary restraining order, prohibiting the Mayor from approving, and the City Clerk from publishing, the ordinance.

"The temporary restraining order was dissolved by order of the District Court April 5, 1967; and on the same date the Mayor of the City of Duluth approved the ordinance.

"The ordinance was published by the City Clerk on April 13, 1967, and became effective May 13, 1967. Such ordinance is Ordinance No. 7564 of the City of Duluth.

"The premises described in Ordinance No. 7564 were at the time of adoption of such ordinance a part of the land embraced within the territory of Independent School District No. 700, St. Louis County, Minnesota, the plaintiff in this proceeding.

"Defendant The Board of Education of the City of Duluth was created by Chapter 312, Special Laws of Minnesota 1891; and by virtue of such act is charged with the responsibility of administering the school program within the territory of the City of Duluth.

"Plaintiff's complaint asked the Court to enter judgment declaring that the annexation of land described in Ordinance No. 7564 of the City of Duluth does not remove the land from the boundaries of Independent School District No. 700.

"In addition, plaintiff alleged in its complaint that Ordinance No. 7564 is illegal and void.

"Arguments made by plaintiff in support of such prayer for relief are essentially two-fold: (1) That the boundaries of the City of Duluth may not be extended without amending Section 1 of the Charter of the City of Duluth, and in the alternative (2) even if the territory annexed properly becomes a part of the City of Duluth for municipal purposes, it nevertheless remains within the jurisdiction of School District No. 700 for school administration purposes.

"Minnesota Statutes, 414.03, deals with annexation of unincorporated property to a municipality; and Subdivision 2 of such section describes those circumstances under which annexation by ordinance is permissible:

" 'Except as hereinafter provided, territory abutting on any municipality and not included in any other municipality may be annexed to the municipality without an order of the commission in the manner provided in this subdivision:

" 'If the land is owned by the municipality, the governing body may by ordinance declare the land annexed to the municipality, and any such land is deemed to be urban in character.

\* \* \* \* \*

" 'Any annexation provided for in this subdivision shall be deemed final upon filing a copy of the ordinance with the commission [Minnesota Municipal Commission], the county auditor, and the secretary of state.'

"*The parties to the proceeding have stipulated * * * that City of Duluth has complied with the provisions of Minnesota Statutes, Chapter 414.*

"Section 1 of the Charter of the City of Duluth provides in part:

" 'The City of Duluth in the County of St. Louis and State of Minnesota shall continue to be, upon the adoption of this charter, a municipal corporation of the same name, and with the same boundaries as it now has, to-wit: * * *.'

"The remainder of the first paragraph of Section 1 of the Charter is devoted to a metes and bounds description of the City as it existed at the time of Charter adoption in 1912. Plaintiff argues that Section 1 of the Charter controls the territorial limits of the City of Duluth; that therefore such limits can only be enlarged through the adoption of an appropriate amendment to the Home Rule Charter. Minn. Stats., Chap. 414, sets forth in specific detail the procedure to be followed in accomplishing municipal annexation in various circumstances. The legislature of the State of Minnesota has given much attention to municipal annexation in the past several years due to the rapid growth of urban communities throughout the State. Annexation proceedings almost always involved differences between the metropolitan community proposing the annexation and those individuals living in the adjoining and unincorporated community. The legislature has attempted to establish an orderly procedure for resolving these differences, such procedure being set forth in Minn. Stats., Chap. 414.

"The matter of annexation demands regulation by State government and not municipal government; and it is the opinion of this Court that the legislature of the State of Minnesota, in adopting Minn. Stats., Chap. 414, intended to establish a state-

wide procedure to accomplish annexation; and that therefore, Section 1 of the Home Rule Charter, which is merely descriptive of the territory of the City of Duluth as it existed in 1912, does not limit the authority of the City Council of the City of Duluth to annex by ordinance where permitted by Chapter 414.

"Minn. Stats., Section 122.21, relating to the annexation of land upon petition of a landowner to have his land detached from the school district in which it lies and have it attached to another school district, provides that such petition must have the consent of the board of the school district from which the land is to be removed. Such section does not deal with annexation of territory by the City of Duluth, pursuant to Chapter 414; and therefore, it is the opinion of this Court that Independent School District No. 700 need not consent to the annexation of the property described in Ordinance No. 7564 by the City of Duluth.

"Chapter 312, Special Laws of Minnesota 1891, under which the Duluth school district was created, provides that all of the territory 'at the present time contained within the municipal limits of the City of Duluth * * * and all the territory of the City of Duluth, as the same shall hereafter be extended and defined, shall be included and constitute the said school district.' Chapter 414 deals with the annexation of territory, and makes no distinction between the purposes of municipal administration and purposes of school administration. There can be no question that upon the annexation of territory as contemplated by Chapter 414, the territory of the City of Duluth is extended and defined as contemplated by Chapter 312, Special Laws 1891, and therefore such extended territory becomes a part of the Duluth school district. It appears that the purpose of Chapter 312, Special Laws 1891, was to establish a uniform school system administered by one body in the territory embraced within the City of Duluth." (Italics supplied.)

The trial court concluded:

"It is the opinion of this Court that Ordinance No. 7564 is valid, lawful and binding; and that the territory therein de-

scribed is now a part of the territory comprising the City of Duluth; and that by virtue of the express language contained in Chapter 312, Special Laws 1891, such territory is also included in and constitutes a part of the Duluth school district now known as Special School District No. 3."

 Plaintiff, referred to hereafter as the school district, contends in this court also that where the boundaries of a Minnesota city of the first class operating under a home rule charter are prescribed by such charter, the boundaries of such city cannot be altered through action of its governing body without compliance with the requirements of an effective charter amendment. The school district points out that Duluth became a city upon the adoption of Sp. L. 1887, c. 2, approved March 2, 1887. Chapter 1, § 2, of this act defined the city's corporate boundaries, and c. 1, § 3, defined the manner in which additions to the territory of Duluth could be effected:

"Whenever any territory abutting upon the city of Duluth * * * shall have been platted by the owners * * * conforming to and corresponding with the adjacent city streets, alleys, blocks and lots, and a map thereof * * * accompanied by a properly certified abstract of title * * * showing the title to be in the * * * parties represented to be the owners of the land which it is desired to annex to the city, the common council may, upon the petition of the owners of not less than half of the property of said platted territory, by ordinance declare the same to be an addition to the city of Duluth * * *."

Minn. Const. art. 4, § 36, added to the state constitution November 3, 1896, and amended November 8, 1898, provided that cities and villages of this state should have the right to home rule. Pursuant to the authority granted under this constitutional provision, Duluth adopted the first home rule charter in March 1900. Shortly thereafter, the legislature adopted a code prescribing the manner in which home rule under Minn. Const. art. 4, § 36, could be established and outlining the limitations of such

authority. R. L. 1905, c. 9, § 748, et seq. Section 751 of this code provided in part:

"* * * And by such charter the city may be authorized to acquire, by gift, devise, purchase, or condemnation, any property, within or without its boundaries, needed for the full discharge of any public function which it is permitted to exercise. *Nothing in this section shall authorize a change of boundaries.*" (Italics supplied.)

The italicized statement in this provision was rendered ineffective on November 4, 1958, when Minn. Const. art. 4, § 36, was repealed and art. 11 was amended to include provisions relating to local government. Art. 11, § 1, now provides in part:

"The legislature may provide by law for the creation, organization, administration, consolidation, division, and dissolution of local government units and * * * for the change of boundaries thereof * * *."

The school district nevertheless contends that while this section of the constitution grants to the legislature the power to provide machinery for the changing of municipal boundaries, the legislature has not implemented this section in so far as it applies to home rule cities. Plaintiff argues that with regard to such municipalities the principle of R. L. 1905, § 751, still applies, as incorporated and amended in Minn. St. 410.07, which provides in part:

"* * * By such charter the city may be authorized to acquire, by gift, devise, purchase, or condemnation, any property, within or without its boundaries, needed for the full discharge of any public function which it is permitted to exercise. Nothing in this section shall authorize a change of boundaries, except that boundaries may be changed so as to include lands and property contiguous thereto when not lying at a distance of more than three miles from the boundaries of the original corporation and when used for industrial or mining purposes or occupied or

leased for such purposes, if the person, association, or corporation so using, occupying, or leasing the same, by writing presented to the charter commission at any time before a draft of the proposed charter is delivered to the clerk of such city or village, so request."

The school district further argues that the basic provisions of R. L. 1905, § 751, have not been amended or revised and that this provision has been the subject of specific supreme court decision as it applies to the city of Duluth. In the case on which the school district relies, City of Duluth v. Orr, 115 Minn. 267, 132 N.W. 265, the court considered a Duluth ordinance purporting to prohibit the storage of explosives within a distance of 1 mile from the corporate boundaries of the city. Defendant was convicted of storing such explosives outside the city limits but within a mile of the municipal boundaries. On appeal his conviction was reversed. This court rejected the theory that a city council could exert any authority or purport to act in any manner beyond its authorized territory, stating (115 Minn. 270, 132 N.W. 265):

"* * * The general rule, applicable to municipalities as well as to states, is that the power and jurisdiction of the city are confined to its own limits and to its own internal concerns. * * *

\* \* \* \* \*

"* * * The right given to the people within prescribed territorial limits to adopt a complete municipal code does not warrant the assumption by them of power over territory and people beyond those limits, even though the control of such territory and people would be convenient and gratifying to the people within the city. The practical difficulties involved in the assumption by cities of such power are apparent. Innumerable conflicts in authority would inevitably follow. Such a result is not reasonably within the purview of the constitutional amendment."

The school district contends that City of Duluth v. Orr, *supra,* states the law binding upon the court in this controversy and argues that if territory without the boundaries of Duluth,

although adjacent thereto, is to be brought within the boundaries of the city, it is up to the residents of such territory, exercising their right of home rule, to bring about the amendment to the charter which would effect such purpose.

In summary, the school district argues: Duluth is created under a special act of the legislature, Sp. L. 1887, c. 2. This special act defines the manner by which additional and contiguous territory can be incorporated within the limits of the city. There has been no compliance with the provisions of this special organic law. The Duluth Home Rule Charter presently in existence defines the boundaries within which the juridical power of the city council shall apply pursuant to the constitutional grant of home rule, and the territory which the city council would now annex lies beyond its power and jurisdiction making the purported action of the council a nullity.

The school district admits that Minn. St. c. 414 purports to regulate the matter of municipal accretion. See, Note, 50 Minn. L. Rev. 911. It contends, nevertheless, that the provisions of c. 414 must be read in conjunction with "law of equal dignity," the Home Rule Code of Minnesota, particularly § 410.07, with the result that until the home rule provisions of c. 410 are amended by the legislature, only those municipalities not bound by home rule charter have the right to invoke the annexation provisions of c. 414.

As was pointed out by the trial court, the parties have stipulated that the city has complied with the provisions of c. 414. Nevertheless, plaintiff in its argument suggests that "the only conclusion possible is that until the home rule provisions of Minn. St., chapter 410, are amended by the legislature, *only those municipalities not bound by Home Rule Charter have the right to invoke the annexation provisions of Minn. St., Chapter 414.*" (Italics supplied.)

If plaintiff's position is correct, a city, such as Duluth, operating under a home rule charter which has no provision for annexation of territory would have no way of annexing to its

boundaries territory owned by it and directly abutting upon its corporate boundaries other than by charter amendment. Defendant city argues, however, and properly so, that because annexation procedures by their very nature involve land outside of the territorial limits of the annexing city, such procedures cannot be spelled out in a home rule charter of the annexing municipality but must instead be established by the authority— here the State of Minnesota—which is paramount to all political subdivisions within this state. We agree that the subject of annexation demands regulation by state rather than municipal government and hold that the legislature in adopting c. 414 preempted the field of annexation and left nothing for regulation by municipalities within the state.

Plaintiff's suggestion that § 410.07, incorporating the language of R. L. 1905, § 751, "Nothing in this section shall authorize a change of boundaries," would have to be repealed or amended before the general annexation statute of the state, Minn. St. c. 414, would have application to home rule charter cities is totally without merit. It does not seem reasonable that the use of this language in 1905 would prevent the legislature 54 years later (1959) from passing laws on the subject of annexation applicable to all political subdivisions of the state, including home rule charter cities. In the light of the applicability of c. 414 to all units of government, plaintiff's claim is entirely without substance.

The answer to plaintiff's suggestion that because of the existence of c. 410 cities of the first class operating under home rule charters are not covered by c. 414 is to be found in § 414.01, subd. 1, which provides as follows:

"A commission is hereby created to hear petitions for the incorporation of property into villages; the detachment of property from municipalities; and the annexation of property to municipalities. *The term 'municipalities' as used herein includes villages and cities of all classes.*" (Italics supplied.)

The three cities of the first class in Minnesota are all home rule charter cities and for that reason it must be assumed without question that the legislature in preempting the field of annexation in this state with the passage of c. 414 intended that c. 414 would apply to home rule charter cities as well as to other municipalities. Nowhere in c. 414 did the legislature in using the term "municipalities" attempt to make any distinction whatsoever between municipalities operating under a home rule charter and those operating under other applicable statutes. The use of the language "any municipality" in § 414.03, subd. 2, is so broad and all inclusive as to include municipalities operating under home rule charters.[1]

In view of the language of § 414.01, subd. 1, the statute dealing with the adoption of home rule charters, § 410.07, cannot be construed as limiting the scope of c. 414. Clearly, any law passed by the legislature within constitutional limitations must be followed by the cities affected, and if their charters conflict, the law is paramount.

We conclude that the Duluth Home Rule Charter, § 1, need not be amended to accomplish annexation of additional territory but is instead merely descriptive of the boundaries of the city of Duluth as they existed at the time of the adoption of the charter, and that the legislature has by the adoption of c. 414 prescribed the exclusive method for accomplishing annexation.

■ Under § 414.03, which deals with annexation of unincorporated territory to a municipality, the city clearly had the right to annex the territory involved in the manner it did.[2] Section 414.03, subd. 2, provides in part:

---

[1]This court held Minn. St. 1961, § 414.03, applicable to a city operating under a home rule charter in Town of Burnsville v. City of Bloomington, 268 Minn. 84, 128 N. W. (2d) 97.

[2]The same conclusion was reached by the attorney general in an opinion rendered at the request of the town of Herman, in which plaintiff school district is located. See, Opinion Attorney General, No. 484a-1, March 27, 1967. Nor is City of Duluth v. Orr, 115 Minn. 267, 132 N. W. 265, at odds with this conclusion since, in that case, while we held that

"Except as hereinafter provided, territory abutting on any municipality and not included in any other municipality may be annexed to the municipality without an order of the commission [Minnesota Municipal Commission] in the manner provided in this subdivision:

"If the land is owned by the municipality, the governing body may by ordinance declare the land annexed to the municipality, and any such land is deemed to be urban in character. * * *

* * * * *

"Any annexation provided for in this subdivision shall be deemed final upon filing a copy of the ordinance with the commission, the county auditor, and the secretary of state."

■ Another contention by the school district is that the Minnesota Legislature and this court have clearly indicated that the only way in which territory can be detached from a school district is by the consent of the school board of that district. The school district makes three points in support of that contention: (a) The enactment of Ex. Sess. L. 1959, c. 71, effected a complete revision of the school laws. This enactment included § 122.21 (Ex. Sess. L. 1959, c. 71, art. 3, § 5), which permits the detachment of territory from an independent school district only with the consent of the school board of that district. (b) The enactment of L. 1961, c. 378, provided for the detachment of specified territory from the Duluth school district and attachment of that area to another school district only with the consent of the Duluth School board. (c) In its determination in Independent School Dist. No. 639 v. Independent School Dist. No. 893, 281 Minn. 163, 160 N. W. (2d) 686, the supreme court, in applying another provision of the revised school laws, Minn. St. 121.11, subd. 3(1), held that a district can be detached from one area

---

the ordinance in question could have no extraterritorial effect, we also said (115 Minn. 270, 132 N. W. 266): "An express grant by the legislature to a municipality of extraterritorial dominion rests on a very different basis."

and attached to another only by the action of the people who would be affected by the transfer.

With respect to the first point, the school district suggests that the legislature has established a clear principle on the subject of implied repeal by a later law in § 645.39, which provides:

"When a law purports to be a revision of all laws upon a particular subject, or sets up a general or exclusive system covering the entire subject matter of a former law and is intended as a substitute for such former law, such law shall be construed to repeal all former laws upon the same subject. When a general law purports to establish a uniform and mandatory system covering a class of subjects, such law shall be construed to repeal preexisting local or special laws on the same class of subjects. In all other cases, a later law shall not be construed to repeal an earlier law unless the two laws are irreconcilable."

Defendant board of education, however, contends that the boundaries of the Duluth school district are automatically extended to include the annexed territory. As it points out, the school district of Duluth is a special district created by Sp. L. 1891, c. 312, which designated its school board, "The Board of Education of the City of Duluth." Under Minn. St. 122.02 and 122.03 the district has since been designated by the commissioner of education as Special School District No. 3. It should be noted here that Sp. L. 1891, c. 312, § 1, provides in part:

"All of the territory at the present time contained within the municipal limits of the city of Duluth * * * shall be and is hereby organized as an independent school district, and its board of directors and their successors in office shall be a corporation under the corporate name of 'The Board of Education of the City of Duluth' * * *. In addition to the foregoing territory all of the territory of the city of Duluth, as the same shall hereafter be extended and defined, shall be included in and constitute the said school district."

The city of Duluth has by annexation of the Duluth Interna-

tional Airport property extended and defined its territory to include that property. This was the result of the annexation proceedings and not the result of any action by the board of education or an owner of land which adjoined the special district. The boundaries of the district were automatically changed thereby pursuant to Sp. L. 1891, c. 312. See, Clinton Falls Nursery Co. v. City of Owatonna, 167 Minn. 299, 209 N. W. 2; In re Petition of Norrish, 155 Minn. 415, 193 N. W. 947; City of Winona v. School Dist. No. 82, 40 Minn. 13, 41 N. W. 539, 3 L. R. A. 46. In the Clinton Falls case this court said (167 Minn. 300, 209 N. W. 2):

"The city of Owatonna constitutes one school district created by Sp. L. 1865, p. 164, c. 30. A change in the boundaries of the city automatically causes a like change in the boundary of the school district."

We do not feel that the school district's attempt to differentiate the foregoing cases constitutes a sound approach to the questions before the court on this appeal. Neither do we agree with its position that § 122.21 impliedly repealed the organic act creating the Board of Education of the city of Duluth. Section 122.21 provides for the attachment of land to a school district on the petition of an adjoining landowner showing the consent of the district from which the land is to be removed. Section 122.21 does not purport to limit the automatic extension of the boundaries of the school district provided in Sp. L. 1891, c. 312, and cannot be construed to do so for the reason that these are entirely separate and distinct statutes. See, Common School Dist. No. 126 v. City of Fargo, 78 N. D. 583, 51 N. W. (2d) 364.

At the time City of Winona v. School Dist. No. 82, *supra,* was decided, G. S. 1878, c. 36, § 12, as amended by L. 1879, c. 28, § 1, provided:

"The board of county commissioners of the several counties in this state may form new school-districts, alter the boundaries of districts, or unite districts, upon petition of a majority of the

freeholders who are legal voters, residing in each district to be affected thereby * * *."

G. S. 1913, § 2677, in effect at the time the Norrish case was decided, and Mason St. 1927, § 2748, in effect at the time the Clinton Falls case was decided, provided in part:

"By like proceedings, and upon petition of the majority of freeholders in each district affected, qualified to vote at school meetings, the boundaries of any existing district may be changed, or two or more districts consolidated, or one or more districts annexed to an existing district."

These statutes were never mentioned in the foregoing cases. It seems clear that the court regarded them as separate and distinct statutes, irrelevant where the automatic extension of boundaries is involved. The same is true here of Minn. St. 122.21.

A special statute providing for a particular place, or applicable to a particular locality, is not repealed by a statute general in its terms and application, unless the intention of the legislature to repeal or alter the special law is manifest, although the terms of the general act would, taken strictly and but for the special law, include the case or cases provided for by it. State ex rel. Stanchfield v. Salisbury, 228 Minn. 367, 374, 37 N. W. (2d) 444, 448. Minn. St. 123.51, enacted as part of the same code which enacted § 122.21, provides in part:

"Special districts as now organized shall continue to operate under the special legislation and charter provisions governing them until conversion to independent districts."

In an effort to avoid the foregoing statute the school district claims that L. 1961, c. 378, impliedly repealed Sp. L. 1891, c. 312. However, the rule is, as stated in 17 Dunnell, Dig. (3 ed.) § 8927, that—

"* * * [r]epeals by implication are not favored. They will not be inferred unless such was the manifest intention of the leg-

islature—unless the later statute fully covers the subject of the prior one and is manifestly inconsistent therewith."

The record is clear that prior to the passage of L. 1961, c. 378, the commissioner of education, pursuant to § 122.03, had designated the Duluth school district as Special School District No. 3. L. 1961, c. 378, far from indicating a manifest intention to repeal Sp. L. 1891, c. 312, actually indicated an intention to preserve its boundary provisions. L. 1961, c. 378, § 1, recites that the boundaries of Special School District No. 3 are coterminous with the boundaries of the city of Duluth; and § 2 thereof recites that "all legislation and acts based on the classification of Special School District No. 3 shall remain valid in all respects in the same manner as if the transfer had not been made * * *."

We have examined Independent School Dist. No. 639 v. Independent School Dist. No. 893 *supra,* cited by the school district herein, and reach the conclusion that it has no bearing upon the present case. In that case this court was simply construing the wording of a specific statute relating to the transportation of pupils.

It is clear that § 414.03 and Sp. L. 1891, c. 312, deal with the annexation of territory. Neither act draws any distinction between purposes of municipal administration and school purposes. We are in accord with the memorandum decision of the trial court and conclude that it should be affirmed.

Affirmed.