**Manny FINGERHUT, et al., Appellants,**

v.

**COMMISSIONER OF REVENUE,**
**Respondent.**

No. 48271.

Supreme Court of Minnesota.

March 23, 1979.

Rehearing Denied May 22, 1979.

---

Faegre & Benson and Erwin M. Goldstein and John K. Steffen, Minneapolis, for appellants.

Warren Spannaus, Atty. Gen., Thomas K. Overton, Sp. Asst. Atty. Gen., Dept. of Revenue, St. Paul, for respondent.

Heard, considered, and decided by the court en banc.

TODD, Justice.

Manny and Rose Fingerhut filed separate 1970 Minnesota income tax returns. They each properly reported their Minnesota gross taxable income which is defined to be Federal adjusted gross income. The Federal adjusted gross income was derived by including a deduction of 50 percent of net long-term capital gains. In 1974, the Fingerhuts filed a claim for refund, alleging that they were entitled to deduct under Minnesota statutes the remaining 50 percent of their long-term capital gains. The trial court disallowed the additional deduction. We affirm.

The facts in this case have been stipulated by the parties. Essentially, these stipulated facts disclose that in 1970 the Fingerhuts had net long-term capital gains that exceeded net short-term capital losses. They filed a joint Federal tax return and, in calculating adjusted gross income, they deducted 50 percent of this excess as permitted by § 62(3) of the Internal Revenue Code. Also in 1970, the Fingerhuts filed separate Minnesota income tax returns. Under Minn.St. 290.01, subd. 20, their Minnesota gross income was defined as Federal adjusted gross income. Their Minnesota gross income, therefore, consisted of a 50-percent deduction for this excess net long-term capital gain. They did not take any further deduction for this long-term capital gain.

In 1974, the Fingerhuts filed a timely claim for refund, arguing that they overpaid the 1970 taxes in the amount of $67,873 by failing to claim a deduction permitted under Minn.St. 290.16, subd. 4. Subdivision 4 allows a deduction equal to 50 percent of the amount by which net long-term capital gain exceeds the net short-term capital loss. In effect, therefore, plaintiffs seek a 100-percent deduction for this excess long-term capital gain—50 percent in the process of computing Minnesota gross income on the basis of Federal adjusted gross income, and 50 percent under the deduction allowed by Minn.St. 290.16, subd. 4.

The commissioner of revenue denied the claim for refund, stating the deduction allowed under § 290.16, subd. 4, was available only to corporations even though the statute is not expressly limited to corporations. The Fingerhuts commenced separate actions against the commissioner of revenue in district court, seeking their claimed refund. The trial court denied their claims. Fingerhuts appeal from that decision.

The issue presented is whether the Minnesota income tax statutes permit a 100-percent deduction of net long-term capital gains by a noncorporate taxpayer for all or part of the years 1961 through 1974. The determination of this issue necessitates an examination of the legislative history of the relevant taxing statutes.

Prior to 1961, only one 50-percent deduction was allowed because the definition of Minnesota gross income did not incorporate the definition of Federal adjusted gross income. Instead, it defined gross income in terms of compensation, gains, and profits. Minn.St. 290.01, subd. 20 (1957). The 50-percent deduction was authorized by § 290.16, subd. 4. Under a different section, Minn.St. 290.18, subd. 2(10) (1957),[1] this 50-

---

1. Minn.St. 290.18, subd. 2(10) (1957), states that adjusted gross income is computed by subtracting "[t]he deductions allowed by section 290.16, subd[ivision] *3*, relating to long term capital gains." (Italics supplied.) Both parties concede the reference to subd. 3 of § 290.16, rather than subd. 4, is a mistaken cross reference, and that the cross reference should be to subd. 4.

percent deduction, authorized by § 290.16, subd. 4, was used in computing Minnesota adjusted gross income.

In 1961, the Minnesota Legislature undertook a major revision of the income tax laws. One change was that it redefined gross income. For individuals, estates, and trusts, gross income was redefined as Federal adjusted gross income. L.1961, c. 213, art. IV, § 1, and Ex.Sess.L.1961, c. 51, § 1. For corporations, gross income was defined in terms of compensation, gains, and profits. Ex.Sess.L.1961, c. 51, § 1. The legislature also repealed Minn.St. 290.18, subd. 2(10), which had provided that the 50-percent deduction under § 290.16, subd. 4, was used in computing adjusted gross income. L.1961, c. 213, art. IV, § 4. However, the legislature did not change § 290.16, subd. 4, which authorized the 50-percent deduction. Subdivision 4, therefore, continued to provide as follows:

"If for any taxable year the net long-term capital gain exceeds the net short-term capital loss, 50 percent of the amount of such excess shall be a deduction from gross income. In the case of an estate or trust, the deduction shall be computed by excluding the portion (if any), of the gains for the taxable year from sales or exchanges of capital assets, which, under section 290.23 (relating to inclusions of amounts in gross income of beneficiaries of trusts), is includible by the income beneficiaries as gain derived from the sale or exchange of capital assets."

Thus, the provision for taking a 50-percent deduction under this statute was retained, but there no longer was a provision explicitly stating that the deduction was taken in computing adjusted gross income. The result is that corporations receive only one 50-percent deduction under subd. 4, whereas noncorporate taxpayers arguably receive two 50-percent deductions—one in computing Minnesota gross income on the basis of Federal adjusted gross income and one under subd. 4.

The relevant provisions remained the same from 1961 until 1971. In May 1971, the legislature deleted the reference to estates and trusts previously appearing in § 290.16, subd. 4. See, L.1971, c. 758, § 1. As part of a significant tax revision in 1975, the legislature added a provision to § 290.16 which states:

"With respect to individuals, trusts and estates, the provisions of this section shall not be applicable and gains and losses shall be reported as provided in section 290.01, subdivision 20." L.1975, c. 349, § 16 (codified as Minn.St. 290.16, subd. 1a).

As a result, for taxable years after December 31, 1974 (the effective date stated in the act), it is clear that corporations are entitled to the 50-percent deduction under § 290.16, subd. 4, and individuals, estates, and trusts are entitled to the 50-percent deduction only in connection with computing Minnesota gross income on the basis of Federal adjusted gross income.

The Fingerhuts vigorously argue that prior to the 1975 tax year, the language of § 290.16, subd. 4, clearly allowed the additional deduction. The language of that particular subdivision did seem to allow the additional deduction. The commissioner of revenue, however, advances two arguments in support of the conclusion that only one 50-percent deduction is allowed: (a) subd. 4 was repealed by implication, and (b) the overall scheme of taxation statutes demonstrates a legislative intent of allowing only one deduction. We will consider the merits of each argument separately.

### a. *Repeal by Implication.*

A major portion of the briefs in this appeal are dedicated to the question of whether § 290.16, subd. 4, was implicitly repealed in 1961 by the new amendments which redefined Minnesota "gross income" as it applies to individuals, estates, and trusts. The argument is that by allowing such taxpayers a 50-percent capital gains deduction in computing Minnesota gross income on the basis of Federal adjusted gross income, the provision for the 50-percent de-

duction under § 290.16, subd. 4, was implicitly repealed. The commissioner does not argue, however, that all of subd. 4 was implicitly repealed. Instead, it is argued that subd. 4 was implicitly repealed only with respect to noncorporate taxpayers.

This court has stated consistently that repeals by implication are not favored. *Independent School Dist. No. 700 v. City of Duluth,* 284 Minn. 279, 170 N.W.2d 116 (1969). Minn.St. 645.39 sets forth, in relevant part, the following rule:

"When a law purports to be a revision of all laws upon a particular subject, or sets up a general or exclusive system covering the entire subject matter of a former law and is intended as a substitute for such former law, such law shall be construed to repeal all former laws upon the same subject."

This court on two occasions has given detailed consideration to repeal by implication in the context of tax statutes. In *State v. Elam,* 250 Minn. 274, 84 N.W.2d 227 (1957), the court held that new statutory provisions requiring that certain objections and defenses to real estate taxes be made prior to the time the taxes were due implicitly repealed other provisions allowing such objections and defenses during delinquent tax proceedings. On the other hand, *State v. Roselawn Cemetery Assn.,* 259 Minn. 479, 108 N.W.2d 305 (1961), this court held that provisions allowing a taxpayer to raise the defense of exemption during delinquent tax proceedings was not implicitly repealed by different provisions requiring all objections within 20 days after adoption of the special assessment. This court in *Roselawn* indicated the two sets of procedures were not sufficiently similar to invoke the doctrine of repeal by implication.

With regard to noncorporate taxpayers, we find it difficult to conclude that the definition of gross income adopted in 1961 in § 290.01, subd. 20, implicitly repealed the 50-percent deduction authorized by § 290.16, subd. 4. Section 290.16, of which subd. 4 is a part, is an extensive statute dealing with capital gains and losses. Section 290.01, subd. 20, on the other hand, deals with the computation of gross income for both corporate and noncorporate taxpayers. The general subjects of the two statutes, therefore, are not sufficiently similar to justify repeal by implication. In addition, a holding that the 1961 definition of gross income implicitly repealed the subd. 4 provision for the 50-percent deduction would be anomalous because the implicit repeal of subd. 4 would apply to only noncorporate taxpayers as the commissioner concedes that subd. 4 still applies to corporate taxpayers. Therefore, we conclude there was no repeal by implication.

*b. The Legislative Intent.*

The commissioner argues the statutory scheme governing income taxation demonstrates a legislative intent that noncorporate taxpayers may receive only one 50-percent deduction for excess long-term capital gains. The Fingerhuts, on the other hand, point to the absence of language in § 290.-16, subd. 4, which would preclude a second 50-percent deduction of such gain.

Ultimately, our construction and interpretation of Minnesota statutes require that we ascertain and effectuate the intention of the legislature. Minn.St. 645.16. At the same time, we are also required to observe the rule: "When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." § 645.16.

We find that the application of the tax law as it pertains to the 50-percent capital gains deduction is not clear and unambiguous, and that the legislative intent was to allow only one 50-percent deduction for excess long-term capital gains. If § 290.16, subd. 4, could be examined in isolation from the other income taxation statutes, we might reach a different conclusion. However, we must evaluate individual taxation provisions against the background of the entire statutory scheme. *Schoenfelder v. Commissioner of Taxation,*

294 Minn. 547, 201 N.W.2d 822 (1972). Evaluated from that perspective, we find at least three statutory amendments or enactments evincing an intent to allow only one 50-percent deduction. All three occurred in 1961, the year in which the Minnesota Legislature redefined gross income for noncorporate taxpayers as Federal adjusted gross income.

First, the legislature repealed much of Minn.St. 290.18, subd. 2—which provided for deduction of items similar to those allowed in computing Federal adjusted gross income—including subd. 2(10), which expressly provided that the 50-percent deduction for excess long-term capital gains could be used in computing Minnesota adjusted gross income. L.1961, c. 213, art. IV, § 4. This repeal indicates the legislature contemplated that noncorporate taxpayers may take only one 50-percent capital gains deduction when computing Minnesota gross income on the basis of Federal adjusted gross income.

Secondly, in 1961 the legislature enacted a provision stating that if property has a lower basis for Federal taxes than for Minnesota taxes, the taxpayer may modify his Federal adjusted gross income (for the purpose of ascertaining Minnesota gross income) by subtracting 50 percent of the gain attributable to this lower Federal basis.

L.1961, c. 213, art. IV, § 1 (codified as Minn.St. 290.01, subd. 20[b][2]). If the Minnesota Legislature had intended that taxpayers be allowed a 100-percent deduction of long-term capital gains, it seems incomprehensible that the legislature would have limited this modification to 50 percent.

Thirdly, the legislature amended Minn.St. 290.09 in 1961. That section enumerates several deductions similar to those provided by section 62 of the Internal Revenue Code in computing adjusted gross income. The Minnesota Legislature added this proviso to the deductions set forth in § 290.09:

" * * * The amount of any item which was [excluded] in arriving at gross income under the provisions of section 290.01, subdivision 20 [by using Federal adjusted gross income], shall not be again [excluded] *under this section.*" (Italics supplied.) L.1961, c. 213, art. IV, § 3.

Because the capital gains deduction is set forth in § 290.16, subd. 4, rather than § 290.09, the highlighted portion of the above proviso indicates that the limitation is not directly applicable. However, the proviso again evinces a general legislative intent that if Minnesota gross income is based on Federal adjusted gross income, deductions taken in computing Federal adjusted gross income cannot again be taken a second time under a different tax statute.[2]

2. It was apparently this proviso which caused the commissioner to issue Income Tax Regulation 2001(22) in 1962. It provides: "(a) In determining the taxable net income of individuals, estates, and trusts in accordance with the provisions of M.S.A. 290.18, Subd. 1, there shall be taken into account only those items of deduction exclusion, election or special treatment provided for by Chapter 290, which have not in any manner entered into the calculation of Federal adjusted gross income under the Internal Revenue Code applicable to the year in question."

This court has recognized that a longstanding regulation will be given weight in construing a statute capable of ambiguous application. One rationale for giving the regulation such weight is well stated in *Gale v. Commissioner of Taxation,* 228 Minn. 345, 37 N.W.2d 711 (1949). Speaking of the income tax regulations, this court said (228 Minn. 351, 37 N.W.2d 716): " * * * [T]hey are entitled to some consideration, especially where intervening sessions of the legislature have given interested parties— who may have deemed themselves prejudiced by such interpretation—an opportunity to urge corrective amendments to change the course of such interpretation. Many thousands of individuals have in the meantime been affected by our state income tax administration. Income taxation is direct and personal in its application to the individual, and it may safely be assumed that an administrative interpretation which has been applied to thousands of individuals—if thought to be erroneous and prejudicial to any appreciable number of them—will be promptly challenged in our legislative halls and that such challenge, if justified, will receive prompt corrective action by legislative amendment."

This reasoning is appropriate in this case. The regulation denying a double deduction was unchallenged for more than a decade, and when it was eventually challenged, the legislature adopted the interpretation given by the commissioner. We find additional support for our conclusion in Income Tax Regulation 2001(22).

On the basis of these enactments and the overall taxation scheme governing Minnesota income taxes, we hold that the Fingerhuts, as noncorporate taxpayers, were not entitled to a second 50-percent capital gains deduction under § 290.16, subd. 4, because they computed Minnesota gross income on the basis of Federal adjusted gross income and already took a 50-percent capital gains deduction in computing Federal adjusted gross income. The legislature has intended that the taxpayers not take a 100-percent capital gains deduction.

The Minnesota cases primarily relied upon by the Fingerhuts can be distinguished. In *Wallace v. Commissioner of Taxation*, 289 Minn. 220, 184 N.W.2d 588 (1971), we held that certain medical expenses were deductible even though reimbursed by an insurer because the statute did not limit the deduction to uncompensated expenses and the "courts cannot supply that which the legislature purposely omits or inadvertently overlooks." 289 Minn. 230, 184 N.W.2d 594. Accord, *Oster & Pederson, Inc. v. Commissioner of Taxation*, 266 N.W.2d 162, 165 (Minn.1978); *Northland Country Club v. Commissioner of Taxation*, 308 Minn. 265, 271, 241 N.W.2d 806, 809 (1976); *First National Bank of Ottumwa v. Blair*, 252 N.W.2d 723, 725 (Iowa 1977). The case is distinguishable because the tax statutes evinced no legislative intent to limit the medical deductions. In the present case, the legislature in various tax enactments has evinced an intention to limit the capital gains deduction to 50 percent.

The Fingerhuts also rely heavily on *In re Answer of Minnesota Power & Light Co.*, 289 Minn. 64, 182 N.W.2d 685 (1970). In that case, the commissioner argued that an exemption for tools and machinery used to produce "marketable products" was limited to tangible products. We rejected the contention, concluding that electricity was a marketable product within the meaning of the statute. That case is again distinguishable because there was absolutely no indication that the legislature intended to limit the meaning of marketable products to tangibles, whereas in the present case there are several enactments indicating that the legislature intended a 50-percent limitation on the capital gains deduction.

In conclusion, we will not attribute to the legislature an intent to allow a 100-percent capital gains deduction under the strict language of an isolated subdivision where other enactments in the statutory scheme evince a legislative intent that the deduction is limited to 50 percent.

Affirmed.

OTIS, J., took no part in the consideration or decision of this case.

