## STATE v. CEDRIC A. LARSON.

195 N. W. 2d 180.

February 25, 1972—No. 42884.

*Harvey E. Skaar,* for appellant.

*Gabriel D. Giancola,* Blaine City Attorney, for respondent.

Heard before Knutson, C. J., and Otis, Kelly, and Hachey, JJ.

RONALD E. HACHEY, JUSTICE.*

This is an appeal from a judgment of conviction in the Anoka County Municipal Court of a violation of an ordinance of the city of Blaine, Minnesota, prohibiting the use of a mobile home as a residence outside of an approved mobile home park, and from an order denying a motion for an order dismissing the action on the ground of lack of jurisdiction or, in the alternative, declaring

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

the ordinance unconstitutional. Appellant was fined $200 and sentenced to 60 days in the workhouse. The workhouse sentence was suspended upon condition that appellant remove the mobile home in question within 30 days.

Appellant is the owner of a 5-acre tract which is located in the city of Blaine, and an issue arises whether the property is under the jurisdiction of the city or the Metropolitan Airports Commission (hereafter MAC) as part of the Anoka County Airport.

Appellant contends that his property lies within the laid-out boundary lines of the so-called Janes Field (Anoka County Airport). The 5 acres in question, however, have never been purchased or taken for use by the airport and, it appears, is the only land within the claimed airport boundaries that the airport has not taken or purchased. Immediately adjacent thereto, the land is mostly rural in nature and the city of Blaine has zoned it for heavy industry. In 1963, appellant desired to erect a house on the property but was denied a building permit for the reason that the airport would be taking the land. In November 1969, appellant located a mobile home on the property without procuring a mobile home permit. The instant prosecution followed. The matter was tried to the court without a jury.

The prosecution called one witness, a building inspector for the city, who testified that he saw the mobile home on appellant's property and that it appeared to be occupied, to the best of his knowledge. One exhibit was introduced, referred to as defendant's Exhibit A, which purports to be a zoning map of the city of Blaine and the villages of Circle Pines and Lexington. The court received it as evidence of the location of the property. Appellant testified, among other things, that he occupied the mobile home as a dwelling and had been asked by the building inspector to move it off the property.

Prior to trial, appellant brought a motion asking for a dismissal of the action for lack of jurisdiction or, in the alternative, seeking an order declaring the Blaine city ordinance, § 57.02(c), pertaining to use of mobile homes as residences, unconstitution-

al. On October 8, 1970, the court found appellant guilty as charged and imposed sentence. On October 15, 1970, the court issued its order denying the motion. Appeal from the denial of the motion was taken, together with the appeal from the conviction.[1]

The record in this case indicates that a number of exhibits contained in the appendices to the briefs were not admitted as exhibits during trial. It appears that Exhibit B in appellant's brief (a map of the area) was not admitted into evidence. In respondent's brief the following exhibits, to which it refers in support of its position, were not admitted: Exhibit A, zoning map (SA-2); Exhibit C, legal description of Janes Field (Anoka County Airport) (SA-7); and Exhibit D, affidavit of director of operations of MAC (SA-8). It further appears that the Blaine zoning map was revised on several dates—September 1969; December 1969; August 1970; November 1970; January 8, 1971; and May 19, 1971. The map in effect at the time of appellant's arrest was the revision made in December 1969. This map, however, was not made a part of the record nor was it included in either of the appendices. On November 17, 1971, two days after the date set for the hearing of this appeal, counsel for appellant dispatched a letter to this court alleging that subsequent to the date of trial, without notice to appellant, certain changes had been made in the map used as an exhibit during trial. It was further alleged that counsel for respondent had filed a different map in his brief, which shows appellant's property to be outside the area designated as Janes Field in the original exhibit.

The legal description of Janes Field, not in the record but contained in respondent's brief at SA-7, indicates that appellant's property is not included within the boundaries of the designated Janes Field.

---

[1] The matter was submitted on briefs without oral argument on November 15, 1971. Oral arguments are not allowed in matters involving an appeal from municipal court unless by special leave of this court. Rule 134.07(1), Rules of Civil Appellate Procedure.

At this stage of the proceedings, we are disposed to consider all of the exhibits which both sides have used and alluded to at trial, following trial, and in the appeal. It was not until after the matter was submitted that objection was raised concerning any of the exhibits. Both sides were aware of the references to the various maps, legal description, and other exhibits. Each exhibit appears to be relevant and pertinent to the issues raised and, in all probability, would have been admitted into evidence if properly offered. It would appear to be of little or no procedural value to remand the matter for a new trial so that the exhibits presented to us could officially be made a part of the record. In the interests of finality and speedy disposition, we decide the issues on the basis of the exhibits presented.[2]

■ It is important to determine whether appellant's property is located inside or outside the designated airport, inasmuch as it is well settled that a municipality has no power to exercise its police powers beyond its boundaries. City of Duluth v. Orr, 115 Minn. 267, 132 N. W. 265 (1911); Independent School Dist. No. 700 v. City of Duluth, 284 Minn. 279, 287, 170 N. W. 2d 116, 121 (1969); Town of Burnsville v. City of Bloomington, 268 Minn. 84, 91, 128 N. W. 2d 97, 103 (1964). It is equally significant to determine ownership of the property. If the MAC owns the land

---

[2] In so deciding we do not intend to overrule Moose v. Vesey, 225 Minn. 64, 29 N. W. 2d 649 (1947), in which we said: "An appeal must be decided solely upon the evidence actually produced in the court below, and any plat or instrument not so produced and received in evidence is a mere fugitive paper, which may not be considered by the appellate court, even though its intended use is solely for an illustrative purpose." 225 Minn. 67, 29 N. W. 2d 652. In that case an entire file relating to a judicial ditch which had not been introduced into evidence was found after trial in the office of a clerk of court in an adjoining county. During the course of appeal that file was forwarded to this court to aid in our disposition of the issues on appeal. In the instant matter, both parties apparently have considered all exhibits referred to as being in the record, and under these circumstances we are disposed to so consider them. Peterson v. Wolf, 1 Neb. (Unofficial) 242, 95 N. W. 332 (1901).

in question, then by statute it is vested with authority to exercise general police power over it. Minn. St. 360.107, subd. 17. Conversely, if appellant owns the land, then the only authority for the MAC's exercise of jurisdiction over it is found in § 360.126, which states:

"Lands constituting any major airport or a part thereof now and which may hereafter be operated by [the MAC] and embraced within any city, village or school district organized under the laws of the state, are hereby detached from such city, village or school district."

Section 360.127 defines a major airport as follows:

" 'Major airport' as herein used is defined to mean any airport now or which may hereafter be operated by [the MAC] as a terminal for regular, scheduled air passenger service."

Based upon the record before us, including the exhibits used and referred to during this appeal, we conclude that (1) appellant owns the land in question; (2) the MAC, never having taken or purchased appellant's property, is not the owner thereof and is not vested with authority to exercise general police power over it pursuant to § 360.107, subd. 17; (3) the airport is not a major airport as defined in § 360.127; and (4) appellant's property is not located within the legally described boundaries of Janes Field (Anoka County Airport). It follows that appellant's motion to dismiss on the ground that the city of Blaine lacked jurisdiction was properly denied by the trial court.

■ Appellant contends that the official zoning map does not show his property to be within the city of Blaine but within the boundaries of the Anoka County Airport and that his conviction should be reversed because he did not have notice of the zoning ordinance applicable to his property.

As hereinabove pointed out, the zoning map in effect at the time was not made a part of the record. However, the property in question is not owned by the MAC nor is it a part of the airport. It seems only reasonable to conclude that the property is

in the city of Blaine and governed by its zoning ordinances, and we do so conclude.

■ Appellant raises the issue of the constitutionality of the ordinance relating to mobile homes. Relative to the use or location of trailer homes, that issue is usually raised when an attempt is made to locate a trailer home in an area zoned residential or upon refusal to issue a permit for such purpose. Here, apparently without applying for a permit, appellant placed a trailer home outside of an approved mobile home park. Hence, it can be said that appellant has not properly raised the issue before this court.[3] Giving appellant the benefit of assuming he has properly raised the issue, we face the problem of adhering or not adhering to legislative judgment in zoning cases. In State ex rel. Beery v. Houghton, 164 Minn. 146, 151, 204 N.W. 569, 570, 54 A. L. R. 1012, 1015 (1925), affirmed per curiam, 273 U. S. 671, 47 S. Ct. 474, 71 L. ed. 832 (1927), we held:

"Zoning ordinances, fair in their requirements, are generally sustained. * * *

"Finally, the exercise of the police power is legislative. Its policy is not for the courts. Only when its exercise unconstitutionally affects personal or property rights do the courts take cognizance; and it is presumed that the legislative body investigated and found conditions such that the legislation which it enacted was appropriate."

See, also, O'Brien v. City of St. Paul, 285 Minn. 378, 173 N. W. 2d 462 (1969); Naegele Outdoor Adv. Co. v. Village of Minnetonka, 281 Minn. 492, 162 N. W. 2d 206 (1968); Filister v. City of Minneapolis, 270 Minn. 53, 133 N. W. 2d 500, 17 A. L. R. 3d 733 (1964), certiorari denied, 382 U. S. 14, 86 S. Ct. 47, 15 L. ed.

---

[3] The power to create residential zones, separate and distinct from industrial zones, has been upheld on numerous occasions. That issue was resolved in Village of Euclid v. Ambler Realty Co. 272 U. S. 365, 47 S. Ct. 114, 71 L. ed. 303 (1926).

2d 10 (1965); and State v. Miller, 206 Minn. 345, 288 N. W. 713 (1939).

■ The burden of proof is upon the appellant to show by clear and convincing proof that the relief he seeks would not result in any substantial detriment to neighboring property improved in reliance on the validity of the ordinance. Filister v. City of Minneapolis, *supra*. He must sustain this burden before the ordinance in question can be declared unconstitutional. In this case, to support his claim that the public welfare did not require this ordinance, appellant did little more than point out that his lot was not in close proximity to any other occupied property. This may be true at present, but Minnesota zoning law recognizes the fact that open spaces today may be used tomorrow, and thus open spaces must be included in plans today to prevent unhealthy or unsafe conditions in the future. This is the obvious purpose of the comprehensive-plan requirement of the Minnesota zoning statute. Thus, it does not appear that appellant has met his burden of proof.

Other jurisdictions which have dealt with this question have generally upheld zoning ordinances banning trailer homes from some districts if another area within the municipality is zoned as a trailer park. In other words, while trailer homes cannot be completely banned from a municipality, they may be restricted to established trailer camps. Decisions of these jurisdictions are discussed extensively in Annotation, 96 A. L. R. 2d 232, § 5. A companion section states that the primary reason communities have segregated trailer homes from the remainder of the community was the early tendency of trailer parks to deteriorate into semi-slums and the loss of property values to neighboring conventional homes due to the unaesthetic appearance of trailers. By limiting trailer homes to designated parks, cities have found it easier to provide police and fire protection and to regulate health conditions, as well as to provide necessary services such as water, sewage, and lighting. See, Annotation, 96 A. L. R. 2d 232, § 2. For these reasons, Blaine's zoning ordinance relating

to mobile homes does aid in the protection of the health, safety, and general welfare of the people and was a valid exercise of the police power.

The conviction appealed from is affirmed. The denial of appellant's motion to dismiss upon the grounds that the city lacked jurisdiction or, in the alternative, that the ordinance is unconstitutional is affirmed.

Affirmed.

MR. JUSTICE TODD, not having been a member of this court at the time of the submission, took no part in the consideration or decision of this case.