STATE *ex rel.* EVELYN V. COBUN

*v.*

THE TOWN OF STAR CITY,
*a municipal corporation, etc., et al.*

(No. 13339)

Submitted September 5, 1973.     Decided October 2, 1973.

*George R. Farmer, Jr., Farmer & Farmer* for relator.

*S. J. Angotti* for respondents.

BERRY, CHIEF JUSTICE:

This mandamus proceeding invoking the original jurisdiction of this Court was instituted by Evelyn V. Cobun, hereinafter referred to as relator, against the Town of Star City, a municipal corporation, the mayor, the town recorder, and the members of the Town Council, hereinafter referred to as respondents. The

relator seeks to compel the respondents to issue her a house trailer permit to locate thirty house trailers on her property within the corporate boundaries of Star City. The respondents have refused to issue the permit on the grounds that the relator's property is zoned "A Residential" which classification prohibits the use of house trailers. A rule was awarded to the relator on March 5, 1973 returnable May 1, 1973; however, on April 30, 1973 the case was continued generally and on September 5, 1973 the case was submitted for decision by the Court upon the arguments and briefs on behalf of the respective parties.

In 1934 the relator and her husband purchased a parcel of real estate containing between four and five acres. The relator and her husband, believing that their land was located outside of the corporate boundaries of Star City, began converting their land into a mobile home trailer park in 1964. Both the sewage system and water system installed at the trailer park were serviced by the City of Morgantown.

The owner of the property adjacent to the Cobun's, Joseph Trovato, also began constructing a mobile home park in 1964 and eventually had places for approximately 40 mobile homes. The Cobun's began adding mobile homes on their property every year, and by 1968 forty-eight mobile homes had been placed on their property. However, in August, 1968 the officials of Star City took the position that part of the Cobun's land was within Star City's corporate boundaries, and as a result, the relator's husband was arrested on several occasions for placing mobile homes within the town's boundaries without obtaining a house trailer permit, as required by a town ordinance. Eventually, the Circuit Court of Monongalia County decided the dispute and held that 1.970 acres of the relator's property was located within Star City's corporate boundaries and thus, since the relator did not have a trailer permit, the Circuit Court issued a mandatory injunction ordering the Cobuns to remove

88

thirty trailers which were located within the corporate boundaries. The Cobuns appealed that decision to this Court, but the appeal was refused. Mr. Cobun died testate in October, 1972 and devised the property in question to the relator.

In January, 1973 the relator filed an application to obtain a trailer permit in accordance with the house trailer ordinance of the Town of Star City. Before the city council acted on the application, relator filed her petition for a writ of mandamus in this Court. Shortly thereafter, the city council refused relator's application for a trailer permit for the reason that relator's property was zoned "A Residential", which classification prohibited the use of house trailers.

Relator contends that a June 26, 1972 amendment to the 1957 zoning ordinance zoned the Cobun property "A Residential" for the first time because the zoning map of 1957 had not specifically zoned the Cobun property. Thus, relator contends the 1972 amendment could not change the use of her property since the "grandfather clause" [Code, 8-24-50, as amended] protected the use of her property as a trailer park. The respondents contend the Cobun property has been zoned "A Residential" since 1957.

The adjacent property owner, Joe Trovato, had been granted a trailer permit every year since 1964. The depositions filed in this case reveal that Trovato had asked that his property be rezoned from "A Residential" to "B Residential", because he wished to build apartments on the property. After his property was rezoned, Trovato was granted a trailer permit and he began constructing a trailer court. In 1972 his property was rezoned back to "A Residential", but under the "grandfather clause" he was allowed to continue to use his property as a trailer park. Relator contends she is being denied equal protection of the law if her adjoining neighbor is allowed to use his property as a trailer park and she is prohibited from operating a trailer park. Trovato's trailer park was

located only 110 feet from the relator's property. The only other trailer park in Star City was located only 400 feet from relator's property but it had been in existence prior to the 1957 zoning ordinance and thus was protected by the "grandfather clause".

The relator also argues that the house trailer ordinance is void because the ordinance does not prescribe rules and regulations for the issuance of trailer permits and thus the city council had no basis for refusing to issue a permit.

Finally, relator contends that if she is not allowed to continue to use her property as a trailer park, the value of her property will decrease approximately 85% which, she contends, would be a taking of private property without just compensation, which violates Section 9, Article III of the Constitution of this State.

The disposition of this case rests on whether the relator's land within the corporate limits of the Town of Star City is zoned "A Residential", which would prohibit the use of the relator's land for house trailers, and if so zoned, whether the action on the part of the respondents in refusing to grant a house trailer permit to the relator was arbitrary, capricious and unreasonable in regard to the relator's property, considering the use of other property owners in the same zoning area.

Zoning ordinances establishing residential districts from which business and commercial enterprises are excluded by a comprehensive plan have been recognized as valid as a proper exercise of the police power of the state since the decision of the Supreme Court of the United States in the leading case of *Village of Euclid v. Ambler Realty Company,* 272 U.S. 365, 47 S. Ct. 114, 71 L. Ed. 303. However, the exercise of the police power must be in the interest of the public and must bear some reasonable relation to the public health, safety, morals or the general welfare of the area affected. *State ex rel. Seattle Title Trust Co. v. Roberge,* 278 U.S. 116, 49 S. Ct. 50, 73 L. Ed.

210; *Nectow v. City of Cambridge,* 277 U.S. 183, 48 S. Ct. 447, 72 L. Ed. 842. Zoning ordinances enacted under the guise of the police power may not impose arbitrary or unreasonable restrictions upon the use of private property, and such ordinances may be valid in their general scope, and at the same time, be arbitrary and unreasonable in their application to a particular property. *Carter v. City of Bluefield,* 132 W.Va. 881, 54 S.E.2d 747. When a zoning ordinance is challenged with regard to the validity of the restriction imposed by such ordinance, each case should be determined on the particular facts involved. *Carter v. City of Bluefield, supra.*

If a petitioner is unreasonably denied the right to use his property in the same manner as other property owners. in the same area, the zoning ordinance would have no substantial relation to the general welfare of the city and the restriction on the use of the petitioner's land would be invalid. *Carter v. City of Bluefield, supra.* In the *Carter* case the petitioner's property, located in a residential zoning area, was surrounded by commercial businesses and the predominate use of the greater part of the area was for business and industry. All new constructions were for business purposes and only a few old residential buildings remained in the area. In the case at bar the evidence clearly shows that there are two other trailer parks in the area where the relator's property is located. One of the trailer parks was located in the area before it was zoned "A Residential" in 1957, and therefore, could legally remain there under the provisions of the statute referred to as the "grandfather clause". Code, 8-24-50, as amended. The other trailer park owned by Joe Trovato was placed in the area in question after Trovato requested the respondent to rezone his property as "B Residential" because he desired to build apartments on his property. Instead of building apartments Trovato built a trailer court in 1964. However, in 1972 the zoning ordinance enacted in 1957 was amended, and among other provisions, the Trovato property was again zoned "A Residential". The Cobun property, as

well as other property located in that area, was also referred to in the amendment to the 1957 zoning ordinance enacted in 1972.

It is the contention of the relator that the area in question was never zoned "A Residential". The zoning map which was made part of the zoning ordinance in 1957, in its legend, shows that the area in white where the relator's property is located was zoned "A Residential". It may be that the Trovato property was improperly rezoned from "A Residential" to "B Residential", since the rezoning was not in accordance with the comprehensive zoning plan; but this would in no way benefit the relator's position. *Cassinari v. Union City,* 1 N.J. Super. 219, 63 A.2d 891; *Santmyers v. Oyster Bay,* 10 Misc. 2d 614, 169 N.Y.S.2d 959; *D'Angelo v. Knights of Columbus Bldg. Asso.,* 89 R.I. 76, 151 A.2d 495; Anno., 40 A.L.R.3d 372.

It is the contention of the relator that the trailer ordinance is invalid because it does not provide for rules or regulations or other criteria for the respondents to use in making decisions to grant or withhold house trailer permits. However, the trailer ordinance does have certain regulations with regard to the location and the facilities of house trailers, and the relator failed to show that these regulations were unreasonable.

The relator cites the case of *State ex rel. Ammerman v. Philippi,* 136 W.Va. 120, 65 S.E.2d 713, as authority for such contention, but that case dealt with an ordinance relating to the erection of buildings which failed to specify any rules and regulations whatsoever in connection therewith and is not applicable to the case at bar.

The case of *City of Eau Gallie v. Holland,* 98 So. 2d 786 (Fla. 1957), is similar to the instant case, but the trailer park ordinance in that case was held unconstitutional because it did not provide adequate standards and because the refusal to grant the license was arbitrary and discriminatory since others had been granted licenses to

operate trailer parks in the same area which was primarily commercial.

The evidence in the case presented here does not show that the area in question for which relator requested a permit to use as a house trailer court was primarily a commercial area. On the contrary, there were no other businesses located in that area zoned as "A Residential" except two other trailer parks which were in the area under entirely different circumstances from those of the relator. It is clearly shown that the circumstances in the instant case are different from those which existed in the *Carter* case, which is relied on by the relator, because, as stated before, the petitioner's property in the *Carter* case was literally surrounded by businesses and commercial enterprises. In the instant case, one of the trailer parks was in operation before 1957 when the area was zoned "A Residential" which negates the relator's argument that she should be allowed to use her property in the same manner. See *Smith v. County of Washington,* 241 Ore. 380, 406 P.2d 545. The other trailer park was placed in that area under a misunderstanding in connection with a spot-zoning of the Trovato property which may have been entirely improper and unjustified. An attempt was made to correct the matter by rezoning Trovato's property back to the original zoning of "A Residential" in 1972.

A writ of mandamus will be issued only where the petitioner shows that he has a clear legal right to such relief. This principle is clearly stated in the second syllabus point in the case of *State ex rel. Jarrell v. Walker,* 145 W.Va. 815, 117 S.E.2d 509, in the following language: "A writ of mandamus will be issued only upon a showing that the petitioner has a clear legal right to the relief sought, and such right cannot be established in the proceeding itself, but must exist when the proceeding is instituted."

Under the facts in the case at bar, the relator has not shown that she has a clear legal right to have a writ of

mandamus awarded for the relief sought in her petition. For the reasons stated herein, the writ is denied.

*Writi denied.*