THE TOWN OF STONEWOOD,

a Municipal Corporation

*v.*

Russell Bell and Dora Bell.

(No. 14654)

*And*

THE TOWN OF BARRACKVILLE,

a Municipal Corporation

*v.*

Joseph Griffin, Judy Flowers

Griffin, Ruth Flowers

(No. 14700)

Decided October 7, 1980.

654

*Paul Mones* for appellants.

*Jones, Williams, West & Jones and John S. Kaull* for appellee.

*Kenneth P. Simons* for appellants.

*J. Scott Tharp* for appellee.

McGRAW, JUSTICE:

For the purposes of decision, this Court has consolidated two cases here on writs of error. Each case raises the issue of the constitutionality of municipal ordinances regulating the placement of mobile homes.[1] Both cases also question the constitutionality of W. Va. *Code* § 8-12-

---

[1] Neither party asks us to find that the dwellings in question are anything other than mobile homes. The W.Va. Code § 21-9-2 (1978 Replacement Vol.) defines mobile homes as follows:

(4) "Mobile home" means a movable or portable unit, designed and constructed to be towed on its own chassis (comprised of frame and wheels), and designed to be connected to utilities for year-round occupancy. The term includes: (1) Units containing parts that may be folded, collapsed or telescoped when being towed and that may be expanded to provide additional cubic capacity, and (2) units composed of two or more separately towable components designed to be joined into one integral unit capable of being separated again into the components for repeated towing. The term includes units designed to be used for residential, commercial, educational or industrial

5(30)[2] which enables municipalities to adopt ordinances prohibiting the placement of mobile homes in certain residential areas with or without a comprehensive zoning plan.

In August of 1979 the town of Barrackville adopted an ordinance entitled "An Ordinance Prohibiting House Trailers and Mobile Homes Within Certain Areas and Requiring Permission for the Placing of House Trailers and Mobile Homes Within the Municipality." This ordinance, known as ordinance No. 9, was adopted pursuant to the authority delegated by W. Va. *Code* § 8-12-5(30). Basically, the ordinance prohibits the placement of mobile homes or house trailers in any residential area other than an existing and recognized trailer court.

The Town of Stonewood adopted a similar ordinance in October of 1971. That ordinance was also adopted pursuant to W. Va. *Code* § 8-12-5(30). The Stonewood ordinance was twice amended, once to provide certain penalties for its violation and once to effectively prohibit the development of any more mobile home parks in that community. Both the Barrackville and Stonewood ordinances have "grandfather" clauses which allow mobile homes placed outside of the trailer courts before the adoption of the ordinances to remain there.

In June of 1977, the appellants Russell and Dora Bell placed a mobile home on lots lying within the town limits of Stonewood. Two months later Stonewood, through its legal counsel, notified the Bells that the placement of their mobile home violated the aforementioned ordi-

---

purposes, excluding, however, recreational vehicles, as defined in this article.

[2] §8-12-5. General powers of every municipality and the governing body thereof.

In addition to the powers and authority granted by (i) of the Constitution of this State, (ii) other provisions of this chapter, (iii) other general law, and (iv) any charter, and to the extent not inconsistent or in conflict with any of the foregoing except a special legislative charter, every municipality and the governing body thereof shall have plenary power and authority therein by ordinance or resolution, as the case may require, and by appropriate action based thereon:

(3) To prohibit with or without zoning the location of occupied house trailers or mobile homes in certain residential areas;

nance and requested that the mobile home be removed.[3] The Bells refused to remove the mobile home. Stonewood brought this action in the Circuit Court of Harrison County seeking a permanent injunction.

In April of 1979, the appellant, Ruth Flowers and her daughter and son-in-law, Judy and Joseph Griffin, also appellants here, appeared before the Barrackville town council and requested permission to locate a mobile home on property owned by them. They sought this use under section three of Ordinance No. 9 which provides a procedure for obtaining permission from the town council to place a mobile home outside a trailer court. The town council denied the appellants' request. Despite this denial, Ruth Flowers moved her mobile home from a trailer court to the property owned by her daughter and son-in-law. Subsequently, Barrackville brought an action in the Circuit Court of Marion County praying for the removal of the home.

The municipalities in both cases moved for summary judgment. As there is no issue of fact in either case, both trial courts properly granted the motions. In both cases, the trial courts found that the appellants placed mobile homes outside recognized trailer parks in violation of the ordinances and that both the ordinances and the enabling statute, W.Va. *Code* 8-12-5(30), were constitutional. It is from these rulings that the appellants prosecute these writs of error.

Both appellants complain that the statute, W. Va. *Code* § 8-12-5(30), and the ordinances violate the substantive due process clause of the fourteenth amendment of the United States Constitution and the West Virginia Constitution's substantive due process provision. Additionally,

---

[3] Initially, Stonewood connected the Bell's mobile home to the town's water system under the mistaken impression that the mobile home was without the town limits. Upon discovering that the mobile home was within the town limits, Stonewood refunded to the Bells an amount representing the extra fee charged to persons outside the town limits who desire the town's water service. Stonewood also notified the Bells they were in violation of the trailer ordinance.

the appellants contend that the statute and ordinances violate the equal protection provisions of both Constitutions. We find these contentions without merit and accordingly, affirm the judgment of the courts below.

As a touchstone into our inquiry concerning the constitutionality of a zoning ordinance and the underlying enabling statute, we must be mindful of the presumption of validity which attaches to legislative determinations concerning such matters. "The enactment of a zoning ordinance of a municipality being a legislative function, all reasonable presumptions should be indulged in favor of its validity." Syl. pt. 3, *G-M Realty v. City of Wheeling*, 146 W. Va. 360, 120 S.E.2d 249 (1961). As an exercise of the municipality's police power, an ordinance must bear a substantial relation to the health, safety, morals and general welfare of the people. Courts are not disposed to declare an ordinance invalid in whole or in part where it is fairly debatable as to whether the action of the municipality is arbitrary or unreasonable. *Anderson v. City of Wheeling*, 150 W.Va. 689, 149 S.E.2d 243 (1966).

In the instant case, the ordinances in question were adopted pursuant to W. Va. Code § 8-12-5(30) which enables municipalities to regulate trailer placement with or without a comprehensive zoning plan. Whether such ordinance may be adopted without a comprehensive zoning plan is a question which has been litigated in many other jurisdictions. The Massachusetts court in considering a similar situation held that since the enabling statute did not require a comprehensive zoning plan as a condition precedent to the exercise of the police power, a municipal ordinance restricting house trailers to licensed trailer parks was valid. *Granby v. Landry*, 341 Mass. 443, 170 N.E.2d 364 (1960). In a leading case on mobile home zoning restrictions, *Napierkowski v. Gloucester Twp.*, 29 N.J. 481, 150 A.2d 489 (1959), the New Jersey Court ruled that an ordinance similar to the one before us was valid under the zoning power. The court there stated that it was satisfied that the municipality might regulate the placement of mobile homes under the general grant of police powers because such

an ordinance was designed to promote the general health, safety and welfare of the community.

By allowing municipalities to regulate mobile homes without a comprehensive zoning plan, the legislature may well have realized the difficulties many West Virginia towns might have in adopting a comprehensive zoning plan under W. Va. *Code* § 8-24-1 *et seq.* Under those code sections a municipality must have a planning commission of not less than five nor more than fifteen individuals who hold regular meetings and who employ necessary personnel. The planning commission is charged with the duty of making and recommending a comprehensive plan with maps, plats, charts and the like. Such activities, of course, would require the employment of professionals skilled in land use planning. A review of the code provisions concerning zoning plans clearly discloses the problems a small municipality would have in administering such a comprehensive scheme. Accordingly, we are compelled to conclude that the legislature did not act arbitrarily or unreasonably in granting to municipalities the authority to regulate, with or without a comprehensive zoning plan, the placement of mobile homes within municipalities.[4]

The second thrust of our inquiry poses the question of whether the ordinances adopted pursuant to W.Va. *Code* § 8-12-5(30) are a reasonable exercise of the authority granted to municipalities under that code section. We must again be mindful of our touchstone in these cases. "If most of the factors necessary to the decision of a zoning case have both positive and negative aspects, it would appear that these matters are fairly debatable, and in such case the court will not overrule the city

---

[4] Legal scholars also agree that mobile home placement may be regulated in the absence of a comprehensive plan if the enabling statute does not require such a plan. *See, e.g.,* Moore, *The Mobile Home and the Law,* 6 Akron L.Rev. 1, 11 (1973); Note, *Mobile Homes: A Partial Solution to West Virginia's Housing Problem,* 81 W.Va.L.Rev. 251, 254, ftn. 17.1 (1979); Note, *Zoning Restrictions Applied to Mobile Homes,* 20 Cleve.St.L.J. 196 (1971); Note, *The Regulation of Mobile Homes,* 13 Syracuse L.Rev. 125 (1961).

authorities in the exercise of their legislative function." Syl. pt. 4 *Anderson v. City of Wheeling*, 150 W.Va. 689, 149 S.E.2d 243 (1966). We must also remember that it is the duty of the appellants in these cases to overcome the presumption of validity which attaches to legislative acts. They may not simply show that there are negative effects flowing from the ordinance. Such a showing would merely place the ordinance within the parameters of our rule which prevents us from striking down a zoning ordinance when it is fairly debatable whether the ordinance is arbitrary or unreasonable. *Anderson v. City of ·Wheeling, supra.* As was stated by the Minnesota court in *State v. Larson*, 292 Minn. 350, 195 N.W.2d 180 (1972), "[t]he burden of proof is upon the appellant to show by clear and convincing proof that the relief he seeks would not result in any substantial detriment to the neighboring property improved in reliance on the validity of the ordinance." 195 N.W.2d at 184.

Although municipal ordinances properly adopted pursuant to a statutory grant of authority are presumptively valid, such a presumption is not to be applied in a vacuum. Questions concerning a particular ordinance should be examined in the context of the facts of the case at bar. *State ex rel. Cobun v. Town of Star City*, 157 W.Va. 86, 197 S.E.2d 102 (1973); *Carter v. City of Bluefield*, 132 W.Va. 881, 54 S.E.2d 747 (1949).

Both appellants contend that the ordinances before us effectively exclude mobile homes from these communities. The facts of both cases, however, reveal otherwise. These ordinances restrict mobile homes to designated trailer parks. The record reveals that the appellant in Barrackville moved her trailer from an existing trailer court. The record in the Stonewood case indicates that there were several vacancies in the seven trailer parks available within the town limits. Nor do these ordinances discriminate between land owners. Anyone desiring to place a mobile home in the communities must place it in a designated trailer court. The appellants' attempt to place these cases with the group of cases

striking down mobile home placement restrictions must fail.

With few exceptions, cases holding invalid ordinances adopted pursuant to similar enabling statutes have turned upon the fact that the municipality completely prohibited mobile homes from the community. *Koston v. Town of Newburgh*, 45 Misc.2d 382, 356 N.Y.S.2d 837 (1965). In *Koston*, the court, in considering an ordinance prohibiting trailer courts, held that a trailer court is not a nuisance per se or detrimental to the general welfare and therefore its prohibition did not bear a real and substantial relationship to the welfare of the community. Some courts, however, have upheld blanket prohibitions and have allowed to stand ordinances excluding trailer courts entirely. *Vickers v. Township Committee of Gloucester Township*, 37 N.J. 232, 181 A.2d 129 (1962). The North Carolina court upheld a city ordinance which prohibited the establishment of trailer courts in certain residential areas within the city of Raleigh and within one mile of the city limits. *City of Raleigh v. Morand*, 247 N.C. 363, 100 S.E.2d 870 (1957). *But see, Oak Forrest Mobile Home Park Inc. v. City of Oak Forrest*, 27 Ill.App. 3d 303, 326 N.E.2d 473 (1975) which struck down an ordinance prohibiting the establishment of trailer parks within that city.

Most courts, however, have determined that the better view is to limit mobile homes to designated trailer courts in order to facilitate the community's exercise of its police power. In *State v. Larson*, 292 Minn. 350, 195 N.W.2d 180 (1972), the Minnesota Supreme Court upheld a municipal ordinance which restricted mobile homes to designated trailer parks. The court there noted that "by limiting trailer homes to designated parks, cities have found it easier to provide police and fire protection and to regulate health conditions, as well as to provide necessary services such as water, sewage and lighting." 292 Minn. at 357, 195 N.W.2d at 184.[5] *See also, Wright v.*

---

[5] According to a study recently released by the Department of Housing and Urban Development (HUD), the concern with fire protection for mobile homes is very real. The study reveals that

*Michaud*, 160 Me. 164, 200 A.2d 543 (1964), upholding an ordinance restricting mobile homes to designated parks; *Village of Cahokia v. Wright*, 57 Ill.2d 166, 311 N.E.2d 153 (1974), holding that an ordinance restricting mobile homes to designated parks was not clearly arbitrary or unreasonable. *Davis v. City of Mobile*, 245 Ala. 80, 16 So.2d 1 (1943); *Cooper v. Sinclair*, 66 So.2d 702 (Fla. 1953), *cert denied*, 346 U.S. 867, 74 S.Ct. 107, 98 L.Ed. 377 (1953); *Wyoming Tp. v. Herweyer*, 321 Mich. 611, 33 N.W.2d 93 (1948).[6]

We are unable to say that the towns of Stonewood and Barrackville have unreasonably or arbitrarily restricted the placement of mobile homes. While we are cognizant of the fact that there is a severe housing shortage in West Virginia which has created the booming demand for mobile homes, *see* Note, *Mobile Homes: A Partial Solution to West Virginia's Housing Problems*, 81 W.Va. L. Rev. 251 (1979), we are not here dealing with an absolute exclusion of mobile homes. If we were, our analysis would necessitate a different approach. *Koston v. Town of Newburgh*, 45 Misc.2d 382, 256 N.Y.S. 2d 837 (1965).

---

there is a higher death rate for victims of mobile home fires compared to occupants of conventional residential dwellings. One reason for this is that because of the nature of the construction of mobile homes, mobile home dwellers are more likely to be trapped in the event of a fire than are inhabitants of conventional homes. Fire Performance Evaluation of the Federal Mobile Home Construction and Safety Standard, prepared by the Federal Emergency Management Agency, U. S. Fire Administration, National Fire Data Center, Sept. 9. 1980.

[6] Several recent cases have upheld municipal ordinances which have regulated mobile homes on the basis of size and structure. In *Cravatt v. Borough of Latrobe*, 44 Pa. 475, 404 A.2d 729 (1979), the court upheld an ordinance regulating the placement of mobile homes on the basis that mobile homes travel to their "permanent" site on their own running gear. In *Currituck County v. Willey*, 266 S.E.2d 53 (N.C. 1980), the court upheld an ordinance which allowed only double wide mobile homes. In addressing the equal protection attack on the ordinance, the court held that, "mobile homes are sufficiently different from other types of housing so that there is a rational basis for placing requirements upon them . . . ." 266 S.E.2d at 53.

The concept of "community" embraces not only the idea of a group of people living together in a given area, but also that those people will live together harmoniously. The appellants will share the benefits and the burdens of these exercises of the police power and it would be not only disruptive but inappropriate for us to strike down an ordinance which substantially advances a legitimate legislative goal. *Agins v. City of Tiburon*, 447 U.S. 255, 100 S. Ct. 2138, 65 L.Ed.2d 106, 48 U.S.L.W. 4700 (June 10, 1980). Here, the appellants have failed to show that these ordinances do not further a legitimate legislative interest. Accordingly, we hold that where the complaining party has failed to show that a municipal ordinance, properly adopted, is arbitrary or unreasonable, this Court will not overrule city authorities in the exercise of their legislative function. For the reasons stated, the judgements below are

*Affirmed.*