# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## January 2016 Term

_____

No. 15-0392

_____

**FILED**

**March 15, 2016**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**PATRICK RUSSELL and
SYLVIA SMITH,**
Petitioners

v.

**TOWN OF GRANVILLE,**
Respondent.

_____

**Appeal from the Circuit Court of Monongalia County
The Honorable Susan B. Tucker, Judge
Civil Action No. 14-C-571**

**AFFIRMED**

_____

**Submitted: March 8, 2016
Filed: March 15, 2016**

**Michael J. Sharley, Esq.**
**Westover, West Virginia**
**Counsel for the Petitioners**

**Michael L. Solomon, Esq.**
**Solomon & Solomon**
**Morgantown, West Virginia**
**Counsel for the Respondent**

**CHIEF JUSTICE KETCHUM delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1.      "The legislature did not act arbitrarily or unreasonably in granting to municipalities the authority to regulate, with or without a comprehensive zoning plan, the placement of mobile homes within municipalities."  Syl. Pt. 2, *Town of Stonewood v. Bell*, 165 W.Va. 653, 270 S.E.2d 787 (1980).

2.      "Repeal of a statute by implication is not favored in law."  Syl. Pt. 1, *State ex rel. City of Wheeling v. Renick*, 145 W.Va. 640, 116 S.E.2d 763 (1960).

3.      "To repeal a statute by implication there must be such positive repugnancy between the provisions of the new statute and the old statute that they can not stand together or be consistently reconciled."  Syl. Pt. 2, *State ex rel. City of Wheeling v. Renick*, 145 W.Va. 640, 116 S.E.2d 763 (1960).

**Chief Justice Ketchum**:

Petitioners, Mr. Patrick Russell and Ms. Sylvia Smith (collectively "Mr. Russell"), appeal a March 30, 2015, order by the Circuit Court of Monongalia County. In its order, the circuit court found that Respondent, the Town of Granville, had authority under West Virginia statutory law to adopt an ordinance regulating the placement of mobile homes and house trailers. Mr. Russell contends the circuit court misconstrued the relevant statutes, and he argues that local governments must permit mobile homes and house trailers wherever site-built homes are permitted.

Upon review, we find no error. The circuit court correctly found Granville had authority under West Virginia statutory law to adopt an ordinance regulating the placement of mobile homes and house trailers. Accordingly, we affirm.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

In September 2013, Granville adopted an ordinance limiting new mobile homes and house trailers to existing mobile home parks. Granville has space available in existing mobile home parks for new mobile homes.

Mr. Russell owns real property in Granville not located in a mobile home park. Still, he wished to place a mobile home on his property, so he requested a variance to the ordinance. Granville declined to grant the variance.

1

Mr. Russell sought relief in the Circuit Court of Monongalia County, asserting Granville's ordinance was contrary to the West Virginia Code. The circuit court found the ordinance did not conflict with West Virginia law, and thus, it was valid and enforceable. Accordingly, on March 30, 2015, it entered an order denying Mr. Russell relief. Mr. Russell now appeals the circuit court's March 30, 2015, order to this Court.

## II.
## STANDARD OF REVIEW

In this appeal, we are asked to determine whether a municipal ordinance comports with West Virginia statutory law. Because this matter involves a question of law, it is subject to a *de novo* review. *Am. Tower Corp. v. Common Council of City of Beckley*, 210 W.Va. 345, 348, 557 S.E.2d 752, 755 (2001).

## III.
## ANALYSIS

This dispute arises out of an ordinance adopted by the Town of Granville, which states:

> 1739.03 . . . No person shall . . . locate, situate, keep or maintain a mobile home or trailer[1] for occupancy upon any

---

[1] Granville Town Ordinance Section 5-17-1739.02 defines "mobile home" and "house trailer," as "(a) a movable or portable unit, designed and constructed to be towed on its own chassis, comprised of frame and wheels, and designed to be connected to utilities for occupancy." This definition excludes recreational vehicles. Under subsection (b) of the same ordinance, a "mobile home park" is "any tract of land on

(continued . . .)

2

> lot or tract of land located within the Town other than such property which is currently designated to be a mobile home park.

Town of Granville Ordinance § 5-17-1739.03 [2013] (footnote added).

Granville adopted this ordinance pursuant to a West Virginia statute, which provides, in pertinent part:

> [E]very municipality and the governing body thereof shall have plenary power and authority therein by ordinance or resolution . . . and by appropriate action based thereon: . . . (30) *To prohibit with or without zoning the location of occupied house trailers or mobile homes in certain residential areas*[.]"

W.VA. CODE § 8-12-5 [2012] (emphasis added). In *Town of Stonewood v. Bell*, 165 W.Va. 653, 270 S.E.2d 787 (1980), we found this statute to be constitutional and held: "The legislature did not act arbitrarily or unreasonably in granting to municipalities the authority to regulate, with or without a comprehensive zoning plan, the placement of mobile homes within municipalities." Syl. Pt. 2, *Id*. at 658, 270 S.E.2d at 791.[2]

Nevertheless, Mr. Russell contends West Virginia law prohibits Granville from regulating the placement of mobile homes and house trailers. He relies on another statute, amended in 2006, which provides:

---

which more than five (5) mobile homes are situated, . . . and designated, conducted and maintained as a mobile home park."

[2] In *Bell*, this Court noted, "we are not here dealing with an absolute exclusion of mobile homes. If we were, our analysis would necessitate a different approach." 165 W.Va. at 661, 270 S.E.2d at 792. Granville's ordinance regulates the location of mobile homes and trailers but does not absolutely exclude them.

> A governing body of a municipality or a county, when enacting *residential design standards* . . . shall uniformly apply such *design standards* and associated review and permitting procedures for factory-built[3] and other single-family constructed homes.

W. VA. CODE § 8A-11-1(c) [2012] (emphasis and footnote added).

Mr. Russell interprets this statute to mean mobile homes and house trailers are permitted everywhere site-built homes are permitted. According to this interpretation, West Virginia Code § 8A-11-1 impliedly repealed West Virginia Code § 8-12-5(30) because the two statutes are irreconcilable, and West Virginia Code § 8A-11-1 was enacted after West Virginia Code § 8-12-5(30). He further argues that because West Virginia Code § 8-12-5(30) is no longer in effect, Granville is without authority to adopt an ordinance regulating the placement of mobile homes and house trailers.

By contrast, Granville contends these two statutes are not irreconcilable. Thus, West Virginia Code § 8-12-5(30) remains in effect and Granville has authority

---

[3] "Factory-built home" is a term that encompasses "mobile home." Under West Virginia Code § 8A-1-2(i), "'Factory-built homes' means modular and manufactured homes." A "Modular home" is any home built in a factory which meets state and local codes. W. VA. CODE § 8A-1-2(s) [2012]. By contrast, "Manufactured homes" are regulated by federal law, and are defined as "a structure, transportable in one or more sections, which . . . is built on a permanent chassis [a wheeled conveyance] and designed to be used as a dwelling with or without a permanent foundation when connected to the required utilities[.]" 42 U.S.C. § 5402(6) [2000]. The primary difference between a "manufactured" and a "modular" home is whether the home is built on a permanent chassis. "Mobile home" is merely an antiquated term for a "manufactured home." Basically, they are the same thing. *Carr v. Michael Motors, Inc.*, 210 W.Va. 240, 247, 557 S.E.2d 294, 301 (2001) ("The statutory definition for a 'mobile home' constructed after 1974 is incorporated into the definition of a 'manufactured home[.]' . . . The term 'mobile home' was replaced with the term 'manufactured home.'").

4

under it to regulate the placement of mobile homes and house trailers. Granville further asserts West Virginia Code § 8A-11-1 does not apply to its ordinance because the statute is limited to "residential design standards."

Therefore, the issue is whether West Virginia Code § 8A-11-1 impliedly repealed West Virginia Code § 8-12-5(30)'s grant of authority to regulate the placement of mobile homes and house trailers. In assessing this issue, we note "[r]epeal by implication is not favored in law." Syl. Pt. 1, *State ex rel. City of Wheeling v. Renick*, 145 W.Va. 640, 116 S.E.2d 763 (1960). Indeed, the implication of repeal must be "clear, necessary, irresistible, and free from reasonable doubt." *State ex rel. Thompson v. Morton*, 140 W.Va. 207, 212, 84 S.E.2d 791, 795 (1954) (internal quotations and citations omitted). "To repeal a statute by implication there must be such positive repugnancy between the provisions of the new statute and the old statute that they can not stand together or be consistently reconciled." Syl. Pt. 2, *Renick*, 145 W.Va. 640, 116 S.E.2d 763. Accordingly, if there is any reasonable construction that renders the two statutes reconcilable, we will not find West Virginia Code § 8A-11-1 impliedly repealed West Virginia Code § 8-12-5(30).

West Virginia Code § 8A-11-1 is limited to "residential design standards." While the statute provides no definition for "residential design standards" or any variation thereof, other provisions in the West Virginia Code guide us in assessing its meaning. As we have held: "In parsing the language of a statute for its meaning, we are mindful that a cardinal rule of statutory construction is that significance and effect must, if possible, be given to every section, clause, word or part of the statute." *Meadows v.*

5

*Wal-Mart Stores, Inc.*, 207 W.Va. 203, 214, 530 S.E.2d 676, 687 (1999) (internal quotations and citations omitted). "In the construction of a legislative enactment, the intention of the legislature is to be determined, not from any single part, provision, section, sentence, phrase, or word, but rather from a general construction of the act or statute in its entirety." Syl. Pt. 1, *Parkins v. Londeree*, 146 W.Va. 1051, 124 S.E.2d 471 (1962).

Chapter 8A of the West Virginia Code encompasses differing types of land use planning ordinances. It lists "prohibiting specific land uses" separately from "[e]stablishing design standards and site plan approval procedures." W. VA. CODE § 8A-7-2(b)(1) & (b)(5) [2012]. Thus, proscribing permitted uses of land is necessarily different from adopting design standards, because an interpretation of a statutory provision which renders it a "mere repetition" must be rejected. *See* Syl. Pt. 7, *Ex Parte Watson*, 82 W.Va. 201, 95 S.E.2d 648 (1918). Likewise, local governments may regulate "the height, area, bulk, use and architectural features of buildings, including reasonable exterior architectural features and reasonable aesthetic standards for factory-built homes[,]" so long as the "process and standards" for such regulations are no more strict than those for site-built homes. W. VA. CODE § 8A-7-2 (b)(8)-(9).

Clearly, the term "residential design standard," as used in West Virginia Code § 8A-11-1, pertains to the minimum standards in terms of architecture, aesthetics, size, etc., to which permitted uses must adhere. Where mobile homes and trailers are permitted, West Virginia Code § 8A-11-1 prohibits local governments from applying one design standard to site-built homes and another, more stringent standard, to mobile homes

6

(e.g. in regard to base size, roof pitch, brick fronts, chimneys, etc.). However, this statute does not say, or even imply, mobile homes and house trailers must be a permitted use of land everywhere site-built homes are permitted. Mr. Russell's argument otherwise contradicts the Legislature's intent to provide municipalities and counties "flexibility when authorizing land development and use." W. VA. CODE § 8A-1-1(a)(9) [2012].

By contrast, West Virginia Code § 8-12-5(30)'s plain terms authorize municipalities to proscribe permitted uses of land, i.e., to regulate the placement of mobile homes and house trailers. Therefore, we conclude West Virginia Code § 8-12-5(30) and West Virginia Code § 8A-11-1 implicate two different types of land use planning ordinances. Thus, the two statutes are not irreconcilable, and West Virginia Code § 8-12-5(30) is not impliedly repealed.

Turning to the facts of this case, West Virginia Code § 8-12-5(30) remains in effect. It grants authority to municipalities to regulate the placement of mobile homes and house trailers. In *Town of Stonewood v. Bell*, 165 W.Va. 653, 270 S.E.2d 787 (1980), we found a municipality acts within its authority when, pursuant to West Virginia Code § 8-12-5(30), it restricts new mobile homes and house trailers to existing mobile home parks. Therefore, Granville acted within its authority when it adopted an ordinance restricting new mobile homes and house trailers to existing mobile home parks. Because Granville did not enact "residential design standards," West Virginia Code § 8A-11-1 does not apply to this case.

7

Accordingly, Town of Granville Ordinance Section 5-17-1739.03 [2013] is valid and enforceable.[4]

## IV.
## CONCLUSION

Upon review, we find no error. The circuit court correctly found Granville had authority under West Virginia Code § 8-12-5(30) [2012] to adopt an ordinance regulating the placement of mobile homes and house trailers. The circuit court's March 30, 2015, order is affirmed.

Affirmed.

---

[4] While the circuit court correctly found Granville's ordinance was valid and enforceable, part of its reasoning was incorrect. The circuit court allowed a witness who participated in drafting the 2006 amendment to West Virginia Code § 8A-11-1 to opine on the amendment's intent and meaning. The circuit court based its holding, in part, on this witness's testimony.

We have held: "Ordinarily, a court cannot consider the individual views of members of the Legislature or city council which are offered to prove the intent and meaning of a statute or ordinance after its passage and after litigation has arisen over its meaning and intent." Syl. Pt. 1, *Cogan v. City of Wheeling*, 166 W.Va. 393, 274 S.E.2d 516 (1981).